UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

       Plaintiff,

  -v.-                        Docket No.: **04 CR 273 (NRB)**

**ANTHONY COLOMBO**, *et al,*

       Defendant.
------------------------------------------------------X

---

### DEFENDANT ANTHONY COLOMBO'S OMNIBUS MOTION

---

LOUIS V. FASULO, ESQ. (LF4175)
AARON M. GOLDSMITH, ESQ. (AG4773)
**FASULO, SHALLEY & DiMAGGIO, LLP**
**Attorneys for ANTHONY COLOMBO**
225 Broadway, Suite 715
New York, NY 10007
(212) 566-6212

# **TABLE OF CONTENTS**

NOTICE OF MOTION………………………………………………………………..…4

AFFIRMATION IN SUPPORT………………………………………………………....9

MEMORANDUM OF POINTS AND AUTHORITIES……………………...................11

    Introductory Statement……………………………………………...................11

    I.      Motion to Dismiss Indictment Due to Erroneous
           Grand Jury Instruction……………………………………………12

    II.     Motion to Suppress Eavesdropping and/or
           Electronic Surveillance Evidence, Pursuant to
           18 U.S.C. §2518(10)(A), and the Fourth Amendment…………………………18

    III.    Motion, *In Limine*, to Suppress Evidentiary
           Statements Derived from Philip DioGuardi……………………………………36

    IV.    Motion, Pursuant to Rules 7 and 32.2
           Fed.R.Crim.P. and 18 U.S.C. §§1962 and 1963,
           to Prohibit Substitute Forfeiture……………………………...................42

    V.     Motion for Summary of Expert
           Testimony Regarding Reputation……………………………………………45

    VI.    Motion to Strike Surplusage, Pursuant to
           Rule 7(d) Fed.R.Crim.P., and to Preclude
           "La Cosa Nostra," "Colombo Brothers Crew"
           Or "Mafia" References……………………………………………46

    VII.   Demand for a Bill of Particulars……………………………...................48

    VIII.  Motion for the Government to Give Notice of its
           Intention to Use Evidence of Other Crimes, Wrongs
           Or Bad Acts, Under Fed.R.Evid. 404(b)……………………………………51

    IX.    Motion, *In Limine*, to Preclude References to
           "Other Crimes" and Uncharged Misconduct, Pursuant
           To Rules 103, 104, 403, 404(b), 608 and 609 Fed.R.Evid………………………..52

    X.     Motion for Hearing Regarding Government's
           Allegations Regarding any "Coded" Conversations………………………………59

    XI.    Motion for Hearing to Determine Intelligibility
           Of Tapes and Accuracy of Linesheets……………………………...................61

XII.    Motion to Compel the Government to Disclose
the Identity of Informants, Their Dates of Birth,
Criminal Records, if any, and All Related Material,
Pursuant to *Roviaro v United States*……………………………………………………62

XIII.   Motion for Order, Permitting the Defense to
Interview the Informants, Pursuant to *United States v Saa*………………………………63

XIV.   Motion to Require Full Disclosure of
Any and All *Giglio* Material………………………………………………………………64

XV.    Motion to Discover Exculpatory Evidence
Pursuant to *Brady v Maryland*…………………………………………………………...66

XVI.   Motion for Early Disclosure of *Jencks Act* Material………………………………………68

XVII.  Motion for Discovery and Inspection…………………………………………………………..70

XVIII. Motion for Agents to Retain Their Rough Notes…………………………………………79

XIX.   Motion to Require that the Government
Designate Documents to be Introduced at Trial…………………………………………..80

XX.    Motion to Incorporate and Adopt Motions of
Co-Defendants and Leave to Make Further Motions……………………………………..82


CONCLUSION…………………………………………………………………………………82

**LOUIS V. FASULO, ESQ. (LF 4175)**
**AARON M. GOLDSMITH, ESQ. (AG4773)**
FASULO, SHALLEY & DiMAGGIO, LLP
225 Broadway Suite 715
New York, New York 10007
(212) 566-6212

Attorneys for ANTHONY COLOMBO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**(HONORABLE NAOMI R. BUCHWALD)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 04 CR 273 (NRB) |
| | ) | |
| Plaintiff, | ) | Date: August 24, 2005 |
| | ) | Time: |
| v. | ) | |
| | ) | DEFENDANT'S NOTICE |
| **ANTHONY COLOMBO**, *et al*, | ) | OF MOTION |
| | ) | |
| Defendant. | ) | |
| _____ | ) | <u>ORAL ARGUMENT REQUESTED</u> |

TO:      DAVID N. KELLY, UNITED STATES ATTORNEY,
            BENJAMIN LAWSKY, ASSISTANT UNITED STATES ATTORNEY:

      ANTHONY COLOMBO, by and through his counsel, brings this motion:

I.      For an Order, pursuant to the Fifth Amendment to the United States Constitution, dismissing the instant Indictment; or in the alternative,

II.     For an Order, pursuant to 18 U.S.C.A. §2518(10)(a), and the Fourth Amendment to the United States Constitution, suppressing all evidence, but especially the alleged evidence of racketeering, extortion and gambling, derived from the eavesdropping and/or electronic surveillance conducted of Anthony Colombo's home phone, as well as cellular telephone numbers (914) 443-8182, whereby the Government has

listed the registered owner as ANTHONY COLOMBO with a principal user of PHILIP DIOGUARDI, and (914) 343-3313, whereby the Government has listed the registered owner and principal user as PHILIP DIOGUARDI. The communications were unlawfully intercepted, and the orders of authorization under which they were intercepted are facially insufficient. Additionally, the Government failed to properly minimize all conversations pursuant to 18 U.S.C.A. §2518(10)(a); or

III. For an Order, pursuant to *Crawford v Washington*, 124 S.Ct. 1354 (2004), and 801(d)(2)(E) of the Federal Rules of Evidence, suppressing the use of evidence derived from recordings of Phillip DioGuardi; and

IV. For an Order, pursuant to Rules 7 and 32.2 of the Federal Rules of Criminal Procedure, prohibiting the forfeiture of any moneys and substitute assets of Mr. Colombo under 18 USC §§ 1962 and 1963; and

V. For an Order, pursuant to Rule 16(a)(G) of the Federal Rules of Criminal Procedure, requiring the Government to provide a written summary of any such expert testimony it intends to offer in its case-in-chief, should it intend to offer reputation evidence (expert testimony) pursuant to 18 USC §§ 892 and 894; and

VI. For an Order, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, striking surplusage from the indictment, and to preclude the Government from making "La Cosa Nostra," "Mafia," and "Colombo Brothers Crew" references at trial; and

VII. For an Order, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, requiring the Government to provide Mr. Colombo with a Bill of Particulars related to all counts of the indictment to which Mr. Colombo was allegedly involved; and

VIII.    For an Order, pursuant to Rule 404(b) of the Federal Rules of Evidence, requiring the Government to give notice of it's intention to use evidence of other crimes, wrongs, or bad acts of the defendant and of the general nature of any such evidence it intends to introduce at trial; and

IX.    For an Order, pursuant to Rules 103, 104, 403, 404(b), 608 and 609 of the Federal Rules of Evidence, instructing the attorney for the Government, his representatives and witnesses to refrain from making any direct or indirect reference whatsoever, including cross-examination of the defendant, at trial, before the jury of any other extraneous crimes or misconduct by the defendant or other defense witnesses other than those specifically set out in the indictment and, or, in the alternative granting a pretrial hearing *in limine* on this issue; and

X.    An order pursuant to Rules 104, 403, 404(b), 702 and 705 of the Federal Rules of Evidence directing that a pretrial hearing be held to determine whether the Court may properly admit into evidence such expert testimony with respect to allegedly "coded" conversations as the government may seek to offer at trial; and

XI.    For an Order, pursuant the Fifth and Sixth Amendments of the United States Constitution and Rule 104(c) of the Federal Rules of Criminal Procedure, for a hearing to determine the audibility of tapes and provide transcripts the Government intends to offer at trial, at least three (3) months prior to the date of the scheduled trial; and

XII.    Pursuant to Fed. R. Crim. Proc. 12(b)(4) and 16, in accordance with the doctrine of *Raviaro v. United States*, 353 U.S. 53 (1957), disclosing the names, dates of birth, criminal records, etc., of any confidential sources or informants from whom the Government presently intends to elicit testimony at trial; and

XIII. Pursuant to *United States v. Saa*, 859 F.2d 1067 (2d Cir. 1988), directing the Government to make the confidential informants available to the defense so that they may be interviewed prior to trial; and

XIV. For an Order, pursuant to the doctrine enunciated in *United States v. Giglio*, 405 U.S. 150 (1972) requiring full disclosure of any relationship and/or agreements as and between the Government and any witness, co-defendant or unindicted co-conspirator;

XV. For an Order, pursuant to the Due Process clause of the Fifth and Fourteenth Amendments to the Constitution, for the disclosure of exculpatory or favorable evidence requested herein; and

XVI. For an Order, pursuant to 18 U.S.C. §3500, requiring the Government to disclose all statements and reports within the meaning of the *Jencks Act*; and

XVII. For an Order, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requiring the Government to produce and permit the defendant and his counsel to discover and inspect each of the items requested herein; and

XVIII. For an Order, pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rule 26.2 of the Federal Rules of Criminal Procedure, requiring all Government agents to retain their rough notes; and

XIX. For an Order, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requesting the government to make available a list of documents it intends to introduce at trial; and

XX. For an Order, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, granting permission to incorporate and adopt motions filed by all co-defendants; and for such other and further relief as this Court deems just and proper.

This motion is based on the attached memorandum of points and authorities.

Respectfully submitted,

Dated:  August 24, 2005                     LOUIS V. FASULO, ESQ.
        New York, NY                     AARON M. GOLDSMITH, ESQ.
                              **FASULO, SHALLEY & DiMAGGIO, LLP**

**Attorneys for ANTHONY COLOMBO**


**TO:**

        UNITED STATES DISTRICT COURT, SDNY
        Clerk of the Court
        500 Pearl Street
        New York, NY  10007

        UNITED STATES ATTORNEY'S OFFICE, SDNY
        Attn.: Benjamin Lawsky, AUSA
        1 St. Andrews Plaza
        New York, NY 10007

**LOUIS V. FASULO, ESQ. (LF4175)**
**AARON M. GOLDSMITH, ESQ. (AG4773)**
FASULO, SHALLEY & DiMAGGIO, LLP
225 Broadway Suite 715
New York, New York 10007
(212) 566-2679

Attorneys for ANTHONY COLOMBO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**(HONORABLE NAOMI R. BUCHWALD)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 04 CR 273 (NRB) |
| | ) | |
| Plaintiff, | ) | Date: August 24, 2005 |
| | ) | Time: |
| v. | ) | |
| | ) | AFFIRMATION IN SUPPORT |
| **ANTHONY COLOMBO**, *et al*, | ) | OF ALL MOTIONS |
| | ) | |
| Defendant. | ) | |
| | ) | <u>ORAL ARGUMENT REQUESTED</u> |

I, LOUIS V. FASULO, an attorney duly admitted to practice before the Courts of the State of New

York, and the District Court of the United States of America, Southern District of New York, affirm the

following under penalty of perjury:

1.  I am a member of FASULO, SHALLEY & DiMAGGIO, LLP.  My associate, Aaron M.

Goldsmith and I are the attorneys representing Mr. Anthony Colombo in the above-captioned matter.  As

such I am fully familiar with the facts, circumstances, pleadings and proceedings heretofore had herein.

2.  I make this affirmation in support of Mr. Colombo's Motions, as outlined in the Notice above,

and for such other and further relief as this Court deems just and proper.

3.  I certify that any and all statements included in the within Memorandum of Points and

Authorities, in support of Mr. Colombo's Motions that are not otherwise supported by cited authority are

true and correct to my personal knowledge, information and belief. My knowledge and belief are based upon my participation in the proceedings of this matter heretofore had herein, investigation of this matter as performed in my capacity as Counsel, review of documents and discovery provided thus far, conversations with my client and review of the file as contained and kept in my office.

Dated:      August 24, 2005
            New York, NY

_____
LOUIS V. FASULO, ESQ. (LF4175)

TO:         UNITED STATES ATTORNEY'S OFFICE, SDNY
            Attn.: Benjamin Lawsky, AUSA
            1 St. Andrews Plaza
            New York, NY 10007

**LOUIS V. FASULO, ESQ. (LF4175)**
**AARON M. GOLDSMITH, ESQ. (AG4773)**
FASULO, SHALLEY & DiMAGGIO, LLP
225 Broadway Suite 715
New York, New York 10007
(212) 566-6212


Attorneys for ANTHONY COLOMBO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**(HONORABLE NAOMI R. BUCHWALD)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 04cr0273 (NRB) |
| | ) | |
| Plaintiff, | ) | DATE: August 24, 2005 |
| | ) | TIME: |
| v. | ) | |
| | ) | MEMORANDUM OF POINTS AND |
| **ANTHONY COLOMBO,** *et al*, | ) | AUTHORITIES IN SUPPORT OF |
| | ) | DEFENDANT'S MOTIONS |
| Defendant. | ) | |
| | ) | |

## INTRODUCTORY STATEMENT

On March 30, 2004, defendant Anthony Colombo, together with 18 co-defendants, was arrested and charged in a 27 count indictment. The indictment alleges that Mr. Colombo was part of a racketeering enterprise involved in illicit financial activities that terminated in 2002.

A.     **Because the Grand Jury is Instructed it Must Indict if There is Probable Cause, Mr.
Colombo was Denied His Fifth Amendment Right to the Grand Jury's Independent
Exercise of its Discretion**

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ."  U.S. Const., Amend. V. *See also United States v. Calandra*, 414 U.S. 338, 343 (1974) ("In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a 'presentment or indictment of a Grand Jury'") (citation omitted).  The Supreme Court has characterized the grand jury "as a primary security to the innocent against a hasty, malicious and oppressive persecution; it serves the invaluable function in our society as standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded on reason or was dictated by an intimidating power or by malice and personal ill will." *Wood v. Georgia*, 370 U.S. 375, 390 (1962).

In order to fulfill its role in "standing between the accuser and the accused," the Grand Jury must be "*independent* of both the prosecuting attorney and the court."  *United States v. Sigma International, Inc.*, 244 F.3d 841, 856 (11th Cir. 2001) (emphasis in the original; citations omitted).  The Supreme Court has recognized "[t]he necessity to society of an independent and informed grand jury."  *Wood*, 370 U.S. at 390; *accord Stirone v. United States*, 361 U.S. 212, 218

---

[1]   The instant motion is being made upon information and belief.  Mr. Colombo requests that the "ground rules," or the grand jury general impanelment instructions be disclosed to support this motion.  *See United States v. Alter*, 482 F.2d 1016, n.21 (9th Cir. 1973) ("Alter was entitled to know the content of the court's charges to the grand jury.  The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not.  *E.g.* U.S. Judicial Conference Committee on the Operation of the Jury System, Handbook for Federal Grand Jurors 10 (1971)).

(1960) (emphasizing that independence of the grand jury is essential to the "very purpose" of the grand jury right). The independence of the grand jury is of constitutional magnitude: "the Fifth Amendment's 'constitutional guarantee *presupposes* an investigative body acting independently of either the prosecuting attorney or *judge*.'" *United States v. Williams*, 504 U.S. 36 (1992) (quoting *United States v. Dionisio*, 410 U.S. 1, 16 (1973)) (emphasis in original; internal quotations omitted). Indeed, "an infringement [of the grand jury's independence] may result in grave doubt as to a violation's effect on the grand jury's decision to indict." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 259 (1988).

A manifestation of that independence is the Supreme Court's recognition that no court can speculate as to whether or not a grand jury would return an indictment on a particular set of facts. Thus, in *Ex parte Bain*, 121 U.S. 1 (1887), the Court declined to speculate whether the grand jury would have adopted an amended form of the indictment created after the district court struck a portion of it: "it is not for the court to say whether [the grand jury would have returned the amended indictment] or not." *Id.* at 9; *accord Stirone*, 361 U.S. at 217 ("neither this court nor any other can know that the grand jury would have been willing to charge [a theory not contained in the indictment]"). Because it is independent of the prosecutor and the court, *Stirone*, 361 U.S. at 218, the existence of probable cause does not compel the grand jury to indict. The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense -- all on the basis of the same facts. *Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (quoting *United States v. Ciambrone*, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)) (emphasis added); *accord Gaither v. United States*, 413 F.2d 1061, 1066 and n.6

(D.C. Cir. 1969) ("Since it has the power to refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh") (citation, internal quotation omitted); *United States v. Asdrubal-Herrera*, 470 F. Supp. 939, 942 (N.D. Ill. 1979) ("a grand jury can return a true bill or a no bill as they deem fit" and it may consider the availability of administrative relief as an alternative to criminal sanctions); *Application of Jordan,* 439 F. Supp. 199, 204 n.5 (S.D.W.V. 1977) (recognizing the grand jury's authority to decline to return an indictment as a "form of (grand) jury nullification") (parentheses in the original, citation omitted); 1 S. Beale, W. Bryson, J. Felman, M. Elston, *Grand Jury Law and Practice* § 1:6 at 1-32 (2d ed. 1997) ("The indicting grand jury -- like a trial jury -- may also shield the accused from the criminal charges even though there is an evidentiary basis if the grand jurors conclude that the charges are improperly motivated or unjust") (hereinafter "*Beale*").[2]

The grand jury's freedom to decline to return an indictment even in a "case where a conviction can be obtained," *Vasquez*, 474 U.S. at 263, is a function of its role as a protector of the people from the power of the executive branch.

By refusing to indict, the grand jury has the unchallengeable power to defend the innocent

---

[2] The grand jury's authority to refuse to return an indictment which is supported by probable cause is analogous -- but not identical -- to a petit jury's ability to acquit despite proof beyond a reasonable doubt, a power typically described as jury nullification. *See generally Jones v. United States*, 526 U.S. 227, 245 (1999) (citing 4 Blackstone 238-39) (recognizing that even prior to the founding of the Republic, juries enjoyed the right to protect citizens from governmental excess by exercising "what Blackstone described as 'pious perjury': [t]he potential or inevitable severity of sentences was indirectly checked by juries' assertions of a mitigating power when the circumstances of a prosecution pointed to political abuse of the criminal process or endowed a criminal conviction with particularly sanguinary consequences. This power to thwart Parliament and Crown took the form not only of flat-out acquittals in the face of guilt but of what today we would call verdicts of guilty to lesser included offenses. . ."); *accord Apprendi v. New Jersey*, 530 U.S. 466 n.5 (2000). Of course, a petit jury's "nullification" power is frequently invited by the defense. A grand jury, however, exercises such a power only at its own suggestion: grand jury proceedings are *ex parte*. At any rate, it is not necessary to find a requirement that the Grand Jury be given a "nullification" instruction in order to grant the instant motion to dismiss.

from government oppression by unjust prosecution.  And it has the equally unchallengeable power to shield the guilty, should the whims of the jurors or their conscious or subconscious response to community pressures induce twelve or more jurors to give sanctuary to the guilty.

*United States v. Cox*, 342 F.2d 167, 189-90 (5th Cir.) (Wisdom, J., concurring), *cert. denied*, 381 U.S. 935 (1965).  The grand jury acts as the conscience of the community in determining, on a normative basis, whether a prosecution *should* go forward.  "That a grand jury may legitimately perform a quasi-equitable function is implicit in its role as 'an irresponsible utterance of the community at large, answerable only to the general body of citizens, from whom they come at random, and with whom they are at once merged.'"  *Ciambrone*, 601 F.2d at 629 n.2 (Friendly, J., dissenting) (quoting *In re Kittle*, 180 F. 946, 947 (S.D.N.Y. 1910) (L. Hand, J.).  Thus, as the Supreme Court has recognized, the grand jury has the authority to refuse to authorize a prosecution that it believes, for whatever reason, is unwarranted.

The grand jury's authority to decline to issue an indictment is also well established historically.  As a threshold matter, the Supreme Court has observed that "[t]here is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor."  *Costello v. United States*, 350 U.S. 359, 362 (1956).  Historical evidence of the institution's development, in both England and this country's colonial period, demonstrates that the grand jury's role in providing protection to the people from the executive was one of the main reasons that the grand jury was perceived as such an important guarantor of personal freedoms.  *See generally* A. Leipold, *Why Grand Juries Do Not (And Cannot) Protect the Accused*, 80 Cornell L. Rev. 260, 308 (1995) (hereinafter "*Leipold*").

Given that the Supreme Court has recognized this power, *see Vasquez*, 474 U.S. at 263, a conclusion strongly supported by the historical evidence, and "[t]he necessity to society of an independent and informed grand jury," *Wood*, 370 U.S. at 390, this Court must find that grand juries today possess the authority to choose not to indict.  Indeed, in a time where the grand jury is

under frequent attack as insufficiently independent, *see generally Leipold*, 80 Cornell L. Rev. 260, the grand jury's authority not to indict is arguably more important than ever.

**B.     The Grand Jury Instructions Given in this Case are Doubly Erroneous: They (1) Mislead the Grand as to its Role and (2) Fail to Advise the Grand Jurors of Their Historic Power to Refuse to Indict**

Upon information and belief an evaluation of the transcript of the grand jury impanelment will reveal that at the outset the grand jurors are advised that  their *sole* responsibility is to make probable cause determinations compelling the grand jury to return an indictment when that *sole* test has been met.   In other words the instructions usurp the grand jurors independence. Obviously, probable cause determination is *a* responsibility of the grand jury, but it is not the only one: "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." *Vasquez*, 474 U.S. at 263.   Upon information and belief the instructions provided to the grand jurors in this case simply cannot be read to be consistent with the Supreme Court's teachings in *Vasquez*, as the instructions tell the grand jurors that they are bound to indict if the standard is met.

Upon information and belief the instructions to the grand jury also runs afoul of the Supreme Court's teachings as to the relevance of penalty information. Upon information and belief the grand jurors are instructed that they are not to consider the wisdom of the laws enacted by Congress nor the punishment applicable for the crime.

If the grand jury has "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense[,] all on the basis of the same facts [,]" *Vasquez*, 474 U.S. at 263, then surely it can consider punishment: how else is it to exercise the power that the Supreme Court has confirmed that it possesses?  The claim that the grand jurors cannot judge the wisdom of the criminal laws enacted by Congress, is also unsupported according to the history of the institution: the fact that

16

grand jurors did exactly that was well known when the Fifth Amendment was adopted. *See, e.g.,*
*Leipold*, 80 Cornell L. Rev. at 285. In short, the grand jurors who indicted Mr. Colombo were
likely given this description of their role, a description that cannot be reconciled with their
constitutional powers as recognized by the Supreme Court.

In addition, these instructions improperly encourage deference to the United States
Attorney's Office, contrary to the "very purpose" of the Fifth Amendment grand jury right. *See*
*Stirone*, 361 U.S. at 218. Upon information and belief the charge conceals from the grand jurors
the government attorneys' ability to withhold exculpatory evidence from the grand jury's
consideration, *United States v. Williams*, 504 U.S. 36 (1992), to rely on unconstitutionally seized
evidence, *United States v. Calandra*, 414 U.S. 338 (1974), and to present to them only hearsay,
denying them the opportunity to evaluate the credibility of the declarants. *Costello v. United*
*States*, 350 U.S. 359 (1956). A grand jury cannot be "independent" without knowing of the
government's ability to present to them far less than the whole story.

Again, the Grand Jury upon information and belief was improperly instructed that the
probable cause determination has already been made by a magistrate judge after a preliminary
hearing, and that it, the Grand Jury, will be asked to determine whether there should be an
indictment. This is another major defect in the instruction. The Grand Jury is told that a probable
cause determination has already been made in the context of some sort of preliminary hearing.
This is both factually inaccurate -- there is no hearing -- and misleading as a matter of law – it
suggests that a finding of no probable cause would contradict a prior judicial determination. Mr.
Colombo requests pursuant to Fed. R. Crim. P. 6, production of all grand jury transcripts relating
to or affecting his case. The misleading and inappropriate instructions alone should be sufficient
to compel dismissal of the indictment because they suggest that the Grand Jury is not independent:
grand jurors are essentially told that the court or the prosecutor can tell them when they must

indict. This sort of attack on grand juror independence is a structural error, permitting dismissal in the absence of a showing of prejudice. *See Nova Scotia*, 487 U.S. at 256-57 ("presumption of prejudice" allowed when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair"); *see also Vasquez*, 474 U.S. at 260-64 (allowing dismissal without a showing of prejudice in light of racial discrimination in selection process for grand jurors); *Ballard v. United States*, 329 U.S. 187 (1946) (reversing without analysis of prejudice where women were excluded from grand jury service); *United States v. Larrazolo*, 869 F.2d 1354, 1358 (9th Cir. 1989) (adopting the *Nova Scotia* test). Because the independence of the Grand Jury implicates a fundamental Fifth Amendment interest, *see Stirone*, 361 U.S. at 218 ("the very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge"), a structural error analysis must be applied. As a result of the structural errors caused by the erroneous grand jury instructions the indictment must be dismissed.

For the foregoing reasons, the Indictment must be dismissed, pursuant to the Fifth Amendment to the Constitution of the United States of America.

## II.   MOTION TO SUPPRESS EAVESDROPPING AND/OR ELECTRONIC SURVEILLANCE EVIDENCE, PURSUANT TO 18 U.S.C.A. §2518(10)(A), AND THE FOURTH AMENDMENT

Title III permits the Government to apply to a federal judge for authorization to intercept wire or oral communications. An application for renewal must be made in accordance with 18 USC §2518(1) and (3). Under sub-section (1), a renewal application must include the following: (a)  the identity of the law enforcement officers making the application; (b) a statement of facts relied upon by the applicant, including details about the offense being or about to be committed, a

description of the nature and location of facilities from which the communication is to be intercepted, a particular description of the communications sought, and the identity of the person, if known, committing the offense and whose communications are to be intercepted; (c) a statement about whether other investigative procedures have been tried and failed, or are too dangerous; (d) a statement of the period of time for which the interception is required to be maintained; or of facts establishing probable cause to believe additional communications of the same type will occur thereafter; (e) a full and complete statement of facts concerning all previous applications involving the same persons, facilities and places; and (f) where the application is for renewal or extension of an order, a statement setting forth the results or a reasonable explanation for the failure to obtain such results.

The requirements of Title III are not mere technicalities.  See *United States v Marion*, 535 F2d 697, 706 (2d Cir.1976).  Strict compliance with Title III's strictures is essential in order to protect cherished personal liberties, such as the right to privacy.  See *Id*.  Title III's procedural safeguards are intended to ensure that its statutory authority will be used with restraint.  *United States v Cantu*, 625 FSupp 656, 661 (N.D.Fla.1985), *aff'd* 791 F2d 940 (11th Cir.1986).

In this matter, Congress's fear that the authority permitted by Title III would be used without restraint was realized.  The Government's continued use of wiretap efforts violated the Fourth Amendment and statutory requirements, in that the applications failed to provide an individualized, specific showing of probable cause for each interception or renewal each month, instead impermissibly relying upon a collective showing and agents' hypotheses for the overall operation.  Further, the fact that the authorities failed to properly supervise and minimize is evidenced by the agents' total disregard for minimization requirements.  Finally, a large number of line sheets provided to defendants in discovery are unintelligible.

**A. APPLICATIONS TO THE AUTHORITIES WERE VAGUE AND INSUFFICIENT**.

The defendant, ANTHONY COLOMBO, by and through his attorney, respectfully moves this Court pursuant to 18 U.S.C. §2518(10)(a), and the Fourth Amendment to the United States Constitution, to suppress all evidence, but especially the alleged evidence of racketeering, extortion and gambling, derived from the eavesdropping and/or electronic surveillance conducted of ANTHONY COLOMBO'S home phone, as well as cellular telephone numbers (914) 443-8182 (hereinafter referred to as "Phone 1") whereby the Government has listed the registered owner as ANTHONY COLOMBO with a principal user of PHILIP DIOGUARDI, and (914) 343-3313 (hereinafter referred to as "Phone 2") whereby the Government has listed the registered owner and principal user as  PHILIP DIOGUARDI .  As reason therefore,  ANTHONY COLOMBO states that, the communications were unlawfully intercepted, the orders of authorization under which they were intercepted are insufficient on their face, and agents and authorities failed to minimize any conversations.

An order authorizing electronic surveillance under 18 USC §2518 may validly be issued only if there is probable cause for a belief that an individual is committing, has committed, or is about to commit, one of the enumerated offenses and there is probable cause for a belief that particular conversations concerning that offense will be obtained through such interception, 18 USC §2518(3)(a), (b), at the place or over the telephone as to which the interception is to be conducted.  *See, e.g.*, *United States v. Wagner*, 989 F.2d 69, 71 (2d Cir. 1993); *United States v. Vento*, 533 F.2d 838, 847 (3d Cir. 1976).  Affidavits in support of electronic surveillance are to be judged according to the same probable cause standards as conventional search warrants.  *See, e.g.*, *Unites States v. Leisure*, 844 F.2d 1347, 1354 (8th Cir. 1988); *United States v. Nersesian*, 824 F2d. 1294, 1306 (2d Cir. 1987).

The statutory requirements of Title III are co-extensive with the Constitutional

requirements of the Fourth Amendment. *Leisure, supra.* To demonstrate probable cause, an affidavit must set forth facts and circumstances which establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 U.S. 213, 238 (1992). The task of the reviewing court is to determine whether the issuing judge had a "substantial basis" for concluding that probable cause existed. *Id.* at 239. In addition to demonstrating probable cause to believe that a crime has been committed, the affidavit must establish probable cause to believe that the items sought are located at the place to be searched, *e.g.*, *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), at the time the warrant is issued, *e.g.*, *Sgro v. United States*, 287 U.S. 206, 211 (1932). When the nexus requirement is translated to the wiretap context, the affidavit must set forth facts and circumstances which demonstrate probable cause to believe that communications fitting the particularized description required by 18 USC §2518(1)(b)(iii) will be intercepted during the period of interception authorized in the order, 18 USC §§2518(1)(b), (3)(b) at the place or over the telephone as to which the interception is to be conducted.

There are multiple consecutive Orders issued in this matter, dated August 9, 2000, through October 31, 2002, and into calendar year 2003. It should be noted that no applications were made between January, 2002 and September, 2002. Orders for the interceptions of Phone 1 and Phone 2 were executed for the entirety of the above-referenced duration, and are the most relevant for purposes of this suppression motion. Wiretaps on Mr. Colombo's home phone were conducted from August 9, 2000 to September 6, 2000. Essentially, the affidavits used as a basis for these Orders, set forth the probable cause, with reference to gambling and extortion, which form the basis of all charges against Mr. Colombo. Due to the voluminous nature of all applications and Orders, only illustrative examples have been annexed hereto.

In sum, defendant ANTHONY COLOMBO, respectfully submits that when the basis for

probable cause for the interception of telephone calls related to extortion and gambling by ANTHONY COLOMBO is examined, that probable cause is almost non-existent. However, since the facts underlying probable cause, relating to Mr. Colombo, were "lumped" into a comprehensive affidavit that contained a large number of other subjects/interceptees, the reviewing Judge, respectfully, may have been unable to separate and distinguish the probable cause related to Mr. Colombo. This problem becomes more complex when one considers that affidavits setting forth probable cause for investigations covering extortion and gambling now support the Government's twenty-seven (27) count indictment.

Mr. Colombo does **not** argue that the probable cause detailed against him should be micro-analyzed and that only the direct, pinpoint occurrences relating to him should be used to determine the overall probable cause used to intercept his conversations. Conversely, he argues that when all the totality of probable cause relating to his alleged involvement in the alleged activity is analyzed, as a whole, it is **still** seriously lacking.

Compare *United States v. Ambrosio, et al*, 898 F.Supp. 177 (S.D.N.Y. 1995), whereby Judge Chin detailed no less than six intricate indicia of probable cause relating to the subject of a narcotics wiretap (and that subjects' attempt to suppress the authorizations based on lack of probable cause):

-    **180 telephone calls** to the subject's cellular telephone from his *own* pizzeria restaurant in a four-month period where the same restaurant telephones were used to negotiate other drug deals with a confidential informant and **where the restaurant was mentioned as a possible location for a drug transaction**.
-    
-    A specific conversation where the subject's employee called the subject's restaurant twice **(from a location where a codefendant negotiated for drugs with the CI)** and asked to speak to the subject. When the employee was advised that the subject was not there, the employee responded to have the subject call him back to not waste the employees time and let the employee know if the subject had "anything" for him.
-    
-    Surveillance of the subject meeting at a warehouse owned by a known heroin trafficker.

- 
- Surveillance of the subject meeting at a social club operated by a member of the "Sicilian Mafia" involved in heroin and cocaine trafficking. The club was also a location frequented by two people previously convicted of distributing kilogram quantities of cocaine to a FBI undercover agent.The subject traveled to or paid for others' trips to Italy, Columbia, and Albania; trips **documented to be relating to narcotics distribution**. The documentation of these trips, i.e. where, when, by whom, etc. all detailed extensive distribution activity.

   The subject's employee called the subject's restaurant from the same drug location, mentioned above, and **spoke to the subject about a narcotics transaction involving the subject's supplier in Canada and detailing whether the transaction was going to occur**.

Judge Chin went on to determine that, "[t]hus, when read together in context as a whole, and not dismantling in piece-meal fashion, these allegations support Judge McKenna's finding to believe that probable cause existed to believe that the subject was engaged in criminal activity."

Additionally, compare *United States v. McGuinness*, 764 F.Supp. 888 (S.D.N.Y. 1991) whereby Judge Carter held that a probable cause determination made by Justice Steven Crane, of the Supreme Court of New York for the county of New York, with respect to four of nine total authorization orders, was valid. Judge Carter made an exhaustive analysis of the four questionable extensions of the wiretap order and the probable cause relating to one of the subjects, McGuinness, in each of the extensions. When each of the factors set forth in *McGuinness* is reviewed and compared to the case at hand, it is clear that probable cause does not exist in this matter.

The Government broadly mischaracterized and over-simplifies actions, resulting in a total lack of specifically articulated probable cause in this matter. Set forth below is a summary of an application for the extension of pen-registers and trap-and-trace devices, dated October 19, 2000 and annexed hereto as Exhibit "A." It should be noted that the Agents' affidavits in support of extending eavesdropping warrants cite to the affidavits for pen-registers and trap-and-trace devices.

"For example…from August 23, 2000, to [October 19, 2000], approximately 62 calls were noted between the Christopher Colombo home phone and the Anthony Colombo home phone, 49

between Christopher Colombo home phone and the Philip DioGuardi cell phone, 14 between the Christopher Colombo home phone and the Philip DioGuardi home phone…30 calls were between the DioGuardi cell phone and the Anthony Colombo home phone."
(See Exhibit "A," at Paragraph 23.)

"Moreover, the Anthony Colombo home phone remained in contact with Philip DioGuardi home phone. Nine calls were noted between the two numbers during this period [*August 23, 2000 to October 19, 2000*]. Moreover, six calls were noted between the Anthony Colombo home phone and the Leo Caldera phone number (914) 496-4563. Another two calls were noted between the Anthony Colombo home phone and the home phone of Eddie Robinson. 31 calls were noted between the Anthony Colombo home phone and the EDP Construction cell phone (917) 337-5357…."       (See Exhibit "A," at Paragraph 24.)

Clearly, agents conducting the investigation relied on the volume of calls made between family members Anthony and Cristopher Colombo, as well as  a long-time friend Philip DioGuardi, as the basis for probable cause.  Had the agents been able to glean any statements remotely inculpatory of gambling and/or extortion, they certainly would have cited to same. Instead, the agents' lack of articulated and specific examples highlights the lack of merit for eavesdropping warrants.

Further examples can be found in the original application for an extension of the eavesdropping on Mr. Colombo's phone.  The agents' flawed hypotheses and misinterpretations of a handful of phone-calls are the sole basis for the applications of extensions.  The first call is from Mr. Colombo's son, in which he states that there is no check for his father.  Mr. Colombo explained to his son that the check would be in his wife's name, "It's for your mother."  The second call, from JOHN CONTINO, explains that a paycheck had been left, but that any mix-up would be taken care of "…on Monday…."  (See paragraphs 26 and 27 of the copy of the Affidavit in Support of an Application for an Extended Eavesdropping Warrant, is annexed hereto as Exhibit "B.")  From these two short conversations, the monitoring agents incorrectly theorized that Mr. Colombo must be extorting EDP Construction for "no-show" jobs.

Another phone-call from Mr. Colombo to PHILIP DIOGUARDI on August 14, 2000, discussed "whether DioGuardi was going to stop by at Anthony's house that day." The two agreed that PHILIP DIOGUARDI would stop at Mr. Colombo's house around 11:30 am. Based on that conversation alone, the monitoring agents surmised, "**This call** reveals that DioGuardi meets with Anthony at his house on a **routine basis**…these meetings…are consistent, in my opinion, with those involved in the delivery of paperwork regarding a gambling operation." (Emphasis Added) (See paragraph 30 of Exhibit "B.")

The Government may argue that the above listed version of Agent McCabe's description of probable cause towards the defendant, ANTHONY COLOMBO, does not detail the various accounts of others involved in the alleged crimes. It may further argue that various references from other accounts are useful towards establishing criminal ties with Mr. Colombo, as well. However, had Mr. Colombo truly held a managerial position in any or all of the alleged conspiracies and substantive charges contained in the indictment, the quality and quantity of probable cause would have been much more specific, and much greater than the few vague conversations, referenced above. There would have been surveillance to corroborate these conversations, or arrests of individuals placing bets, or running numbers, or making threats to alleged debtors, or documentation of finances, or testimony of confidential informants, or testimony of undercover agents. In other words, there would have been several facts setting forth probable cause, as in *Ambrosio* and *McGuinness*, supra.

Counsel respectfully submits that the evidence of probable cause appearing in the affidavits regarding ANTHONY COLOMBO, was sub-par, even analyzed in a light most favorable to the Government. Thus, the authorization Orders to intercept and use Mr. Colombo's conversations, particularly his conversations with PHILIP DIOGUARDI, were insufficient on their face and all of the conversations should be suppressed as having been intercepted illegally.

## B.  THE AUTHORITIES FAILED TO PROPERLY MINIMIZE.

In enacting the federal wiretap and eavesdropping laws, 18 USC §§2510-2520, Congress' overriding concern was the protection of privacy.  *Gelbard v United States*, 408 US 41, 48 (1973). The District Court's mandate to minimize oral interceptions was premised on the notion that "few threats to liberty exist which are greater than that posed by the use of eavesdropping devices," *Berger v New York*, 388 US 41, 63 (1967), and the specific requirements of Title III.

By its very nature, eavesdropping involves an intrusion on privacy that is broad in scope. "The indiscriminate use of such devices in law enforcement raises grave constitutional questions under the Fourth and Fifth Amendments, and imposes a heavier responsibility on this Court in its supervision of the fairness of its procedures…." *Osborn v United States*, 385 US 323, 329 n.7 (1966).  The Supreme Court in *Osborn* stressed the importance of the minimization requirement holding that only through strict precautions was the danger of an unlawful search and seizure minimized.

The importance of the minimization requirement to the statutory scheme is such that its violation requires suppression.  See *United States v Turner*, 528 F2d 143, 156 (9th Cir.) *cert denied* 423 US 996 (1975) ("In a case where it is clear that the minimization provision of the order was disregarded by the Government throughout the period covered by the order, a total suppression might be appropriate."); *United States v Giordano*, 416 US 505, 527 (1974) ("Congress intended to require suppression where there is a failure to satisfy any of those statutory requirements that directly and substantially implement the Congressional intention to limit the use of interception procedures to those situations clearly calling for the employment of this extraordinary investigative device.")  *United States v Principie*, 531 F2d 1132 (2d Cir.1976), *cert denied*, 430 US 905 (1977) (The Second Circuit affirmed the District Court's suppression of all conversations, whether incriminating or not, intercepted by the monitoring agents after 7:30pm -  a time limitation set by

the warrant). *Cf. United States v Chavez*, 416 US 562, 575 (1974) (Suppression was inappropriate for a ministerial violation of Title III because such "did not affect the fulfillment of any of the reviewing or approval functions required by Congress."); *United States v Donovan*, 429 US 413 (1977) (Failure to comply with "nonessential" and ministerial requirements of 18 USC §2518(1)(b)(iv) did not require suppression.)

Though the Supreme Court in *Scott v United States*, 436 US 128, 135 n.10 (1978), specifically declined to define the scope of suppression for failing to minimize, several Courts of Appeal, as well as several state appellate courts, have dealt with the problem. Some courts have held that total suppression is necessary when the violation results from a flagrant disregard of the minimization requirements of the statute. <u>See</u> *United States v Santora*, 600 F2d 1317, 1320 (9th Cir.), *modified,* 609 F2d 433 (9th Cir.1979); *United States v Hyde*, 574 F2d 856, 869 (5th Cir.1978); *United States v Turner*, 528 F2d 143, 156 (9th Cir.) *cert denied,* 423 US 996 (1975); 429 US 837 (1976); *United States v Suquest*, 547 FSupp 1034, 1039 (N.D. Ill.1982); *United States v Webster*, 473 FSupp 586, 598 (D.Md. 1979), *aff'd in part, rev'd in part on other grounds*, 639 F2d 174 (4th Cir.1981); *aff'd and modified*, 669 F2d 185 (4th Cir.) *cert denied* 456 US 935 (1982); *United States v Curreri*, 363 FSupp 929, 932 (M.D.Fla. 1972); *United States v Leta*, 332 FSupp 1357, 1360 n.4 (M.D.Pa. 1971); *accord*, Fishman, *Wiretapping Eavesdropping* §290 (1978); *compare Rodriquez v State*, 297 So.2d 15, 21 (Fla.1974); *State v Thompson*, 191 Conn. 360 (1983), *cert denied*, 465 US 1006 (1978).

Other courts have held that total suppression is appropriate whenever the minimization requirement is violated, without regard to flagrant abuse. <u>See</u> *United States v Focarile*, 340 FSupp 1033, 1047 (D.Md.), *aff'd sub nom, United States v Giordano*, 469 F2d 522 (4th Cir.1972), *aff'd on other grounds*, 416 US 505 (1974); *United States v Scott*, 331 FSupp 233, 248 (D.DC 1971),

vacated on other grounds, 504 F2d 194 (DC Cir.1974). The New York State Court of Appeals is in accord with this view. *People v Brenes*, 42 NY 2d 41, 49-50, 396 NYS 2d 629 (1977).

In the case at hand, the monitoring agents' failure to properly minimize the recorded conversations pervades the entirety of discovery. As reflected in line sheets, the agents monitored a substantial number of mundane, personal conversations wholly irrelevant to the investigation. Due to the high volume of discovery and large number of instances, a handful of such instances recorded earlier in the scope of the investigation, have been selected as examples for the Court, as follows:

On September 13, 2000, call number 983 is a conversation between CHRISTOPHER COLOMBO and his wife, Suzanne, in which they discuss his wanting to get a haircut.

On September 11, 2000, call number 942 is a conversation between ANTHONY COLOMBO and Suzanne, discussing her daughter.

On September 4, 2000, call number 772 is a conversation recorded from PHILIP DIOGUARDI's phone, between him and CHRISTOPHER COLOMBO, discussing PHILIP DIOGUARI'S magnifying glass.

On September 3, 2000, call number 736 is another conversation between CHRISTOPHER COLOMBO and Suzanne, discussing whether or not the two will have a Barbecue.

On August 26, 2000, call number 503 is a conversation, alleged by the Government to be between CHRISTOPHER COLOMBO, ANTHONY COLOMBO and an individual listed as "James H.," discussing the Point Pleasant Boardwalk, as well as a discussion of a nutritional enhancement and its ability to aid bodybuilders.

On August 16 and 19, 2000, call numbers 170 and 274 are conversations between CHRISTOPHER COLOMBO, ANTHONY COLOMBO and Anthony Colombo, Jr., about the men going on a boat trip.

It should be emphasized that all of the conversations cited in this section are only **some** that have been selected from **one box** (Box B) **of eight** boxes of discovery regarding eavesdropping.

Set forth as Exhibit "C," is a draft transcription, by Counsel, of only a few conversations recorded from Mr. Colombo's home phone, which the Government has failed to properly minimize. These few conversations indicate the total lack of propriety in this investigation.

Based on these small samples, the Court must recognize that greater inadequacy of the Government's eavesdropping and its willful disregard for the statutory guidelines enumerated in 18 USC §§2510-2520.

## C. UNINTELLIGIBILITY

A great number of the line sheets provided to defense counsel during discovery are utterly unintelligible. Hundreds of pages are too dark, too light, cut off, illegible and/or simply omitted. For example, the following pages are unintelligible:

Within Box "B:" pages 346-435, 496-518, 631-633, 644-662, and 875-884. Within Box "C:" 291-300, 399-402, 426-428, 442-446, 453-456, 702-709, 758-765. Additionally, from approximately page 1100 through 1400, there is no reference of which phone numbers are calling into the monitored phone. Within Box "G," pages 1419-1461, have been provided in a manner where the last paragraph of each page is cut off, and at page 1491, there are twenty-four missing or omitted pages. At page 1516, there are approximately fifteen pages missing or omitted, as well as a similar omission at page 1556. Finally, within Box "E:" pages 324-350 are totally illegible linesheets.

As a result, the defendants are severely prejudiced, in that they cannot properly prepare for trial without being fully and accurately apprized of **all** relevant and admissible information and statements recorded during the pending investigation.

## D. PROBABLE CAUSE FOR THE EAVESDROPPING WARRANTS WAS INSUFFICIENT

### (1). The Government's Applications Were Subject to the Incorrect Standard.

The application for an eavesdropping order must establish probable cause with regard to three facts. They are spelled out in 18 U.S.C.A § 2518 (3), which states in relevant part that:

> [T]he judge may enter an *ex parte* order . . . if the judge determines on the basis of facts submitted by the applicant that:
>
> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in . . . this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; . . .
>
> (c) except as provided in [18 U.S.C.A § 2518 (11)], there is probable cause for belief that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C.A. § 2518 (3). Probable cause for an eavesdropping order is measured by the same standards as that for a search warrant. See *United States v. Wagner*, 989 F.2d 69, 71-72 (2d Cir. 1993).

Traditionally, when the probable cause for a search warrant (including an eavesdropping warrant) was based on hearsay information from an informant, the information and manner in which it was recorded in the application had to satisfy the *Aguillar-Spinelli* test. Under that test, the application must first demonstrate that the informant obtained his or her information in a reliable manner. *Aguillar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969) Second, the application must establish either that the informant himself or herself is reliable or that the informant's information has been corroborated by information obtained independently of the informant's allegations. *Id*.

In *Gates*, the Supreme Court held that a search warrant based on an informer's tip need no longer comply with the rigid *Aquillar-Spinelli* test of personal and informational reliability; rather the courts should assess the existence of probable cause from a totality of the circumstances standpoint. *Illinois v. Gates*, 462 U.S. 213 (1983). A number of courts, including the Second Circuit have applied *Gates* to wiretap applications. See *Wagner*, 989 F.2d at 73. However, the New York State courts, as well as others, have refused to apply *Gates* and continue to use the more restrictive *Aguillar - Spinelli* test. See *People v. Griminger*, 71 N.Y.2d 635, 524 N.E.2d 409, 529 N.Y.S.2d 55 (1988). It is our contention that it is the *Aguillar-Spinelli* test not the *Gates* totality of the circumstances test that governs the Courts' probable cause determination in this case. However, under either test the warrant fails.

The eavesdropping warrants at issue in this case were procured by a federal agent working on a joint task force, from a state court judge as such they should have been judged by the two pronged *Aguillar-Spinelli* test not the *Gates* totality of the circumstances test. The Second Circuit held that in dealing with the question of the validity of the warrants themselves it is clearly a question of state law. *United States v. Manfredi*, 488 F.2d 588, 598 (2d Cir. 1973). This they said in a footnote was due to the fact that "in allowing a joint investigation to proceed through the use of a state warrant, [the Government], subjects itself to the risk that state courts may impose on such warrants . . . a higher standard than would a federal court dealing with interpretation of the federal wiretap statues." *Id*. at 398, note 7. Moreover, the court held in *United States v. Marion*, 535 F.2d 697 (2d Cir. 1976), that where a state' procedures for the interception of communications is more exacting than those of the federal statute, the validity of the interceptions would have to comply with both the state as well as the federal statute. *Id*. at 702, (citing *Manfredi*, <u>supra</u>; S. Rep. 1097, 90th Cong., 2d Sess., at 12, quoted in 2 U.S. Code Cong. & Admin. News 2112, 2187 (1968) and n 9.).

More recently, and without recantation, the court has made a distinction between those procedures that are purely evidentiary in nature and those that are designed to protect the privacy interests of

individuals.  See *United State v. Sotomayor*, 592 F.2d 1219 (2d Cir. 1979).  The Court in *Sotomayor* held

that

> "in determining whether to admit wiretap evidence obtained . . . under a
> state court order issued pursuant to a state statute, . . . only those more
> stringent state statutory requirements or standards that are designed to
> protect an individual's right to privacy, as distinguished from procedural
> rules that are essentially evidentiary in character [apply]."

*Id*. at 1225.  Moreover, the court continued by stating that the

> "distinction between procedures governing the interception of wiretap
> evidence and those governing preservation . . . is important.  Since a state's
> protection of privacy normally reflects certain principals central to its social
> and governmental order, our failure to respect its more stringent protection
> of privacy rights would not only violate principles of federalism, but
> encourage state and federal law enforcement officials to bypass state law
> and to engage in federal forum-shopping of tainted evidence."

*Id*. at 1225 - 1226.  The Court continued to explain the reasons for the distinguishing in a footnote,

stating:

> "A second reason for distinguishing between the "right of privacy" and the "evidentiary"
> dimensions of wiretap regulations is provided by Title III of the Omnibus Crime Control
> and Safe Street Act, 18 U.S.C. §§ 2515, et seq., . . . . In enacting Title III, Congress
> specifically intended to leave the states free to adopt limitations on eavesdropping more
> stringent than those applicable to warrants issued by federal court.  To carry out this
> intention § 2516 authorizes eavesdropping pursuant to a warrant issued by a federal court
> in compliance with the standards set out in § 2518 or pursuant to a warrant issued by a state
> court in compliance with § 2518 and with applicable state law."

*Id*. at 1225, n 13 (internal citations omitted).

Most recently in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), the court reaffirmed it s holding

in *Sotomayor* stating

> We held in *United States v. Sotomayor*, 592 F.2d 1219, 1255 that failure to
> comply with state statutory requirements would not preclude admissibility in
> a federal proceeding if the requirements, . . . are "essentially evidentiary in
> character."  *Sotomayor* suggested, however, that more stringent state
> requirements would control if they were designed to protect an individual's
> right to privacy.  The requirement at issue here [exhaustion] is obviously
> designed to protect privacy.  Thus, if the New York statute held state
> authorities to a higher standard of exhaustion than the federal statute,

> *Sotomayor* would suggest that the validity of the wiretap warrant must be
> measured with reference to state law.

*Lilla*, 699 F.2d at 102, n 3 (internal citations omitted).

Applying these principles to the case at hand, it is readily apparent that New York's requirement that an eavesdropping warrant satisfy the stricter *Aguillar-Spinelli* test imposes a standard designed to protect an individual's right to privacy, not merely to assure that evidence obtained remains intact. [2] Accordingly, it is the state's *Aguillar-Spinelli* test, rather than the federal *Gates* standard that should apply.

However, even assuming *arguendo* that *Gates* applies reliability of the informant is still a key factor in determining whether or not probable cause exists under *Gates* [3] and the warrant still fails. Generally, and most commonly, the reliability of an informant is established by asserting that the informant has given information in the past which has led to valid arrests. *United States v. Counts*, 471 F.2d 422, 426 (2d Cir.), cert. denied, 411 U.S. 935 (1973). Problems occur when the informant has no such track record. In these situations, the courts look to other factors such as naming the informant in the affidavit, signing or swearing to the affidavit or testifying under oath, or appearing before the judge prior to the issuance of the order. *United States v. Harris*, 403 U.S. 573, 599 (1971); *United States v. Rollins*, 522 F.2d 160, 164 (2d Cir. 1975). The courts may also look at whether or not the information provided by the informant has been independently corroborated.

---

[2] In *People v. Griminger*, 71 N.Y.2d 635, 529 N.Y.S.2d 55 (1988), the court in holding that it was the two pronged *Aguillar-Spinelli* and not the *Gates* totality of the circumstances that was to be used in New York reasoned that "[w]e are not persuaded however, that the *Gates* approach provides a sufficient measure of protection." *Id.* at 639, 529 N.Y.S.2d at 57.

[3] The court in *Gates* stated that "the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that . . . evidence of a crime will be found. . . ." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Jones v. United States*, 362 U.S. at 271, *Gates*, 462 U.S. at 235, 238-239)

It is our contention that there were material misrepresentations in the government's initial application for an eavesdropping warrant, that when corrected so undermine the probable cause determination that under either the *Aguillar-Spinelli* test or the *Gates* totality of circumstances the warrant fails.

In order to warrant a *Franks* hearing, the defense must make a substantial preliminary showing that a false statement knowingly, and intentionally, or with the reckless disregard for the truth, was included by an affiant in a warrant affidavit, but only if the allegedly false statement is necessary to the finding of probable cause.  <u>See generally</u> *Franks, supra*.  At issue here is the very heart of a probable cause determination, the reliability of the information given to the issuing judge.

In conclusion, since the application for the eavesdropping warrant at issue lacks probable cause, as discussed in other sections of this motion, under either standard this Court should suppress the fruits of any wiretaps and listening devices, or in the alternative, hold a *Franks* hearing and determine if the proper probable cause so existed.

(**2**). **The Government Relied Upon Information to Retro-actively Assert Probable Cause.**

During certain applications to the Government, information obtained during the course of the eavesdropping was used to retro-actively assert probable cause against defendant ANTHONY COLOMBO and others. The finding of probable cause sufficient to grant eavesdropping warrants must be made upon the facts and allegations as asserted by the Government at the time of the application. To insert recently found information in an effort to bolster, let alone make necessary assertions of probable cause upon an earlier finding, is wholly improper. As discussed above, the operation of the Government when making the applications for and conducting eavesdropping, shows the use of such device without proper restraint.

Therefore, the Government should be precluded from the use of any recorded conversations obtained through the use of eavesdropping warrants secured against ANTHONY COLOMBO and other defendants.

**E. CONCLUSION**

In light of all of the foregoing, it is respectfully requested that this Court suppress the use of any and all recorded conversations, statements and affiliated evidence derived by and through the wiretaps, pen registers and trap-and-trace devices used, pursuant to the mandates of Title III.

### III.  MOTION *In Limine*, TO SUPPRESS EVIDENTIARY STATEMENTS DERIVED FROM PHILIP DIOGUARDI

Should the Court choose not to suppress the fruits of the Government's eavesdropping in its entirety, any statements derived from recorded conversations of PHILIP DIOGUARDI a/k/a "Fat Philly," must be precluded from use at this trial: first, pursuant to *Crawford v Washington*, 124 S.Ct. 1354 (2004), and second, as hearsay.  Despite the fact that any such statements were allegedly made in furtherance of the alleged conspiracy, the Government has, by indicting a deceased co-conspirator, created testimonial statements, and should be precluded from admitting the statements, on the grounds that they are hearsay.

**A.  The Recorded Statements Should be Excluded, Pursuant to *Crawford v Washington*.**

*Crawford v. Washington*, 124 S.Ct. 1354 (2004) held that out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause of the Sixth Amendment, unless the witnesses are available and defendants had prior opportunity to cross-examine those witnesses, regardless of how reliable those statements may be deemed by the Court.  The Supreme Court further elaborated that, "the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."  *Id*., at 1370.  Finally, in dicta, the Court held that, "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty.  This is not what the Sixth Amendment prescribes." *Id.*, at 1371.

While *Crawford*'s limitations strictly deal with "testimonial" statements, the Court was unwilling to prescribe a definition of "testimonial," for purposes of the holding's application.  *Id*., at 1374.  The Court mentioned, at one point, that an evil to which the holding was aimed at was, "namely, *ex parte* examinations as evidence against the accused." *Id.* at 1363.  Traditionally, co-

defendants' statements made in furtherance of a conspiracy have been held to be non-testimonial by nature, and have been explicitly admissible as exceptions to hearsay. *Ohio v Roberts*, 448 US 56 (1980), *United States v Saget*, 377 F3d 223 (2d Cir. 2004)(Sotomayor), see also Rule 801(d)(2)(E) of the Federal Rules of Evidence. Even when knowingly addressing a government official, a co-conspirator's statements are not generally considered testimonial unless made under somewhat formal circumstances suggesting that they may be used subsequently in a legal proceeding. See *United States v Saget*, 377 F3d at 229, and *Crawford*, 124 S.Ct. at 1364.

Only two cases have dealt with *Crawford*, as applied to the statements of a deceased witness. One such case deals with a dilemma quite similar to the case at hand. *United States v Hendricks*, 395 F3d 173 (3d Cir.2005) held that conversations intercepted by law enforcement through authorized Title III wiretaps were not "testimonial" as contemplated by *Crawford*. The case concerned a narcotics distribution conspiracy based in the U.S. Virgin Islands. The Third Circuit reviewed an interlocutory appeal by the Government of the District Court's granting of defendants' motion *in limine* to exclude wiretap conversations. The Third Circuit held conversations of co-conspirators were not "testimonial" and were further admissible as hearsay exceptions under Federal Rule of Evidence 801(d)(2). However, the Court also analyzed the admissibility of certain conversations with a Confidential Informant who had died prior to trial. The Court cited several cases from all Circuits attempting to further define "testimonial" in the wake of *Crawford*, including *United States v Cromer*, 389 F3d 662, 674 (6th Cir.2004), stating that "'[a] statement made knowingly to the authorities that describes criminal activity is almost always testimonial' and thus concluding that CI's statement to police wherein CI implicated defendant in a criminal activity constituted testimonial hearsay." *United States v Hendricks*, 395 F3d at 180. The Court went on to cite a reference to the NACDL's amicus brief in *Crawford*, stating that even the NACDL opined "Title III recordings cannot be deemed 'testimonial' as the speakers certainly did

not make the statements thinking they 'would be available for use at a later trial.'" *Id.* at 181, citing *Crawford v Washington*, 124 S.Ct. at 1364 (2004). When discussing the admissibility of the dead CI's recorded conversations, the *Hendricks* Court stated,

> "the conversations that fall within this heading are face-to-face conversations that were recorded by [the deceased CI] wearing a taping device provided by the Government. It cannot be disputed that [the deceased CI] knew of the Government's surreptitious recording and documentation of these conversations. The District Court noted that, '[i]n discussing the 'core' class of statements that are considered testimonial, the...*Crawford* Court specifically included...pretrial statements that declarants would reasonably expect to be used prosecutorially.'"
> *Id.* at 182, citing *Crawford v Washington*, 124 S.Ct. at 1364 (2004).

> The Court went on to say, "The District Court's analysis is not without some appeal. Insofar as they contain the statements of [the deceased CI], the conversations reasonably could be categorized as involving statements that [the deceased CI] expected to be used prosecutorially; obtaining evidence for the prosecution is, after all, the *raison d'être* of being a confidential informant." *Id.* at 182.

Ultimately, the Court refused to determine if the deceased Confidential Informant's recorded statements were "testimonial" in nature, based upon the Government's assertions that any use of such statements would not be introduced to prove the truth of the matter asserted. Therefore, the statements would fall outside the definition of hearsay. It is important to note that the Court distinguished the above-referenced reasoning from *Bourjaily v United States*, 483 US 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), a case discussed in *Crawford* where the admission of a conversation between a co-defendant and a confidential informant was permitted. The Third Circuit pointed out that in *Bourjaily*, the **co-defendant** was "unavailable" by means of asserting his Fifth Amendment right to silence. In *Hendricks,* as in the case at hand, the unavailable witness was acting as an agent of the Government, aware that his incriminating statements/conversations would be used in furtherance of the prosecution, yet is unavailable due to his death. Moreover, in *United States v Saget*, <u>supra</u>, the Court analyzed whether the statements at issue were "testimonial" by examining whether or not the declarant **could have expected them to be used in furtherance**

**of a prosecution**.  Accordingly, under circumstances where an individual is cooperating with the Government, any recorded conversations involving the cooperator must be deemed "testimonial," pursuant to *Crawford*.

In *United States v Manfre*, 368 F3d 832 (8th Cir.2004), a man was killed during the commission of the substantive crime.  Mr. Manfre hired a friend and employee, Mr. Rush, to burn down a failing nightclub for the insurance proceeds.  Rush died in the explosion.  During the trial, the Government introduced incriminating statements made by Rush to several  individuals during the planning of the crime.  The statements were introduced through the testimony of those individuals.  The Eighth Circuit held that, regardless of *Crawford*, the statements were admissible as statements of a co-defendant in furtherance of a conspiracy, and as admissions against penal interest.  *United States v Manfre* is wholly distinguishable from the case at hand since the deceased witness **was not acting in any capacity as a Government agent prior to his demise**.

The New York State Attorney General's Office - Organized Crime Task Force monitored a cell phone, number (914) 443-8182 registered to defendant ANTHONY COLOMBO but solely used by Mr. DioGuardi, as well another cell phone (914) 343-3133, solely owned and used by Mr. DioGuardi, continuously from on or about May 1, 2000, through approximately March 23, 2001.  Throughout that entire period, Mr. DioGuardi made references to sums of moneys owed.  The Government has proffered at detention hearings for defendants ANTHONY COLOMBO, CHRISTOPHER COLOMBO and GERARD CLAMENZA that such comments referred to extortionate extensions of credit, attempts to collect extensions of credit by extortionate means as well as wagers and debts in furtherance of alleged gambling.  Mr. DioGuardi's cell phone was also monitored by the U.S. Department of Justice, from on or about June, 1999 through approximately August, 1999.

Philip DioGuardi passed away on **January 16, 2004**, from a heart attack.  This indictment

was filed on March 24, 2004, and entered on March 30, 2004. The Government was aware of Mr. DioGuardi's death prior to the indictment. See pages 2 and 3 of the press release authored by the U.S. Attorney's Office for the Southern District of New York, and released on March 30, 2004 to coincide with the arrests of the defendants in this matter, as annexed hereto as Exhibit "D.".

It is Counsel's belief that Mr. DioGuardi was cooperating with the Government prior to his death. Mr. DioGuardi was arrested in California for charges related to assault and possession with intent to distribute narcotics. It is Counsel's understanding from conversations and detention hearings that Mr. DioGuardi was either not sentenced, or did not serve any prison term for one of those crimes. Mr. DioGuardi entered a plea of guilty in that matter, but was never sentenced to any term of imprisonment. As a direct result of the conversations monitored by the U.S. Department of Justice, Scott "Sonny" Colella, an individual with whom Mr. DioGuardi had numerous conversations, was indicted on charges related to extortion. Mr. Colella pled guilty in that matter. Despite his being monitored having numerous conversations with Colella, Mr. DioGuardi was not charged with any crimes. It should be noted that these conversations contain, in part, Mr. DioGuardi's conversation about allegedly "stapling [someone's] eyes shut," which the Government played at certain detention hearings, and relied upon to assert the defendants' danger to the community.

If Mr. DioGuardi was cooperating with the Government during any point of the recording of his conversations, than this Court should preclude the admission of those recordings as testimonial statements under *Crawford*. This Court should follow the logic laid down in *Crawford* and *United States v Hendricks*, that of an individual, acting in some capacity of cooperation with the Government must expect that his statements/conversations will be used in furtherance of the prosecution. Therefore, if the statements/conversations are made knowing the probable use at a later date, in the prosecution of others involved, than said statements/conversations are

"testimonial," under *Crawford*.

Therefore, in light of the foregoing, if Philip DioGuardi was cooperating with authorities, in any way, during the Government's Title III wiretaps, the recorded conversations must be precluded from use, pursuant to *Crawford v Washington*, 124 S.Ct. 1354 (2004).

**B. The Recorded Statements Should be Excluded, as Hearsay.**

Even if Philip DioGuardi was not cooperating with authorities while being recorded under Title III wiretaps, any statements of Mr. DioGuardi, as derived from recorded conversations must not be admitted because they are hearsay. Rule 801(d)(2)(E) of the Federal Rules of Evidence normally permit the use of similar statements as enumerated exceptions to "the Hearsay Rule;" as statements by a co-conspirator in furtherance of the conspiracy.

The Government was aware of Mr. DioGuardi's death prior to indicting him. By the simple act of including him in the indictment, the Government has effectively placed all of his recorded conversations under the protective veil of Rules 801(d)(2)(A) and 801(d)(2)(E).

Should the Government wish to introduce the statements of a co-conspirator, either indicted or unindicted, it must first provide the proper foundation. The proper foundation consists of a showing, by preponderance of the evidence that, (1) the conspiracy existed; (2) the defendant (against which the statements are being used) was a member of the conspiracy; (3) that the statements were made during the conspiracy; and (4) were made in furtherance of the conspiracy. Such proof must consist of evidence "independent of the co-conspirator statements which could themselves be admissible against the defendant under the co-conspirator exception to the hearsay rule." *United States v Occhipinti*, 772 Fsupp 170, 172 (SDNY 1991) *citing* Fed.R.Evid. 801(d)(2)(E). However, hearsay statements admissible through other enumerated exceptions may be used by the Court in its preliminary determination as to whether or not the defendant knowingly joined the conspiracy charged. *United States v Occhipinti*, 772 Fsupp 170, 172 (SDNY 1991)

citing *United States v DeJesus*, 806 F2d 31 (2d Cir), *cert denied*, 479 US 1090, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987).

In the case at hand, the Government has relied on the recorded statements of Philip DioGuardi in attempting to show the defendants involvement in extortionate schemes. The Government has also relied on the recorded statements of Philip DioGuardi to aid in its allegations of gambling activity. Where the Government can not provide independent evidence of alleged activities, it should be precluded from using the recorded statements of Philip DioGuardi at trial, as failing to meet the requirements of Rule 801(d)(2)(E) of the Federal Rules of Evidence.

For the foregoing, it is respectfully requested that this Court preclude the Government from using any recorded statements of defendant Philip DioGuardi a/k/a "Fat Philly" at trial, pursuant to *Crawford v Washington*, 124 S.Ct. 1354 (2004), and Rule 801(d)(2)(E) of the Federal Rules of Evidence.

## IV.  MOTION, PURSUANT TO RULES 7 and 32.2
### Fed.R.Crim.P., and 18 USC §§ 1962 and 1963
### <u>TO PROHIBIT SUBSTITUTE PROPERTY</u>

The Government should be precluded from attempting to seize the assets of defendant ANTHONY COLOMBO, in the event of a conviction, as the noticed property does not meet the requirements of 18 USC §1963. First, a third-party has a vested and bona fide interest in the property. Second, the property is wholly unrelated to any and all activity alleged in the instant matter.

Rules 7 and 32.2 of the Federal Rules of Criminal Procedure promulgate the required procedures under which property may be forfeited, as a penalty under specific statutes. 18 USC §1961, *et seq.*, more commonly known as the Racketeer Influenced Corrupt Organizations (hereinafter referred to as "RICO") statute, outlines under 18 USC §1962(a) and (b), the patterns of activity deemed illegal by the statute as a whole. 18 USC §1963 outlines the criminal penalties for

42

violations of the statute. Included as sub-section (m), the statute permits the forfeiture of substitute property "if any of the property described in subsection (a), as a result of any act or omission of the defendant –

> (1) cannot be located upon the exercise of due diligence;
>
> (2) has been transferred or sold to, or deposited with a third party;
>
> (3) has been placed beyond the jurisdiction of the court;
>
> (4) has been substantially diminished in value ; or
>
> (5) has been commingled with other property which cannot be
>
> Divided without difficulty…."          18 USC §1963(m)(1)-(5)

In the case at hand, the Government has provided notice to Mr. Colombo, that they intend to seek substitute forfeiture for the alleged $10,000,000.00 in proceeds from Counts One and Two of the indictment.  (See pages 52-54 of the Indictment.)  Mr. Colombo's property which the Government wishes to forfeit, in the event of his conviction, is located at 25 Horton Road, Blooming Grove, New York.

## A.  A THIRD-PARTY HAS A FULL, VESTED INTEREST IN THE PROPERTY.

18 USC §1963(l)(2) states that "any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited…may…petition the court for hearing to adjudicate the validity of his alleged interest in the property."

The substantive elements which a third party must establish, under 18 USC §1963(l)(6), in order to successfully obtain amendment of an order of forfeiture are as follows:

"the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid…because the…interest was vested in the petitioner rather than the defendant…." *United States v BCCI Holdings*, 833 Fsupp 32, 36 (DDC, 1993), citing 18 USC §1963(l)(6)(A).

While there has been no conviction, nor forfeiture order in this case, the within application is appropriate, as the Government has chosen property for substitute forfeiture that Mr. Colombo has **no** property rights vested in. The property located at 25 Horton Road, Blooming Grove, New York is deeded to Carol Colombo. The land was gifted to Carol Colombo in 1973, at the time the house on the property was built. A mortgage, in the amount of $40,000.00, was taken out in order to pay for construction costs at the time. Over the years, the mortgage has been re-financed three times. The current lien-holder of the mortgage is "Aurora Loan Services," of Littleton, Colorado, in the amount of approximately $160,000.00.

Therefore, the substitute property that the Government has noticed in the indictment is property that the Government cannot order forfeited. Pursuant to 18 USC §1963(l)(6)(A), Carol Colombo has a vested right in the property, subject to a mortgage in the amount of approximately $160,000.00. Given that the property is deeded to a different individual, the Government may not seek to forfeit said property.

In light of the foregoing, the Court should strike the portion of the indictment, placing Mr. Colombo on notice of the Government's intent to seek substitute forfeiture of the property located at 25 Horton Road, Blooming Grove, New York.

## B. PROPERTY IS UNRELATED TO, AND NOT GAINED FROM ALLEGED ACTIVITY

The RICO forfeiture provisions were intended to provide "new weapons of unprecedented scope for an assault upon organized crime and its economic roots," through "enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Russello v United States*, 464 US 16, 26-27, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) <u>citing</u> Pub.L. 91-452, Title IX, §901(a), 84 Stat.922, 923 (1970). "Section 1963(m) provides a means of assuring that the defendant parts with **the fruits of his racketeering labors**."(Emphasis Added) *United States v Paccione*, 948 F2d 851, 855 (2d Cir.1991). "It is true that in enacting Section 1963,

Congress sought to 'strip [racketeers and drug dealers] of their economic power' **through which their criminal activity is sustained and grows**."(Emphasis Added)  *United States v Gotti*, 155 F3d 144, 149 (2d Cir.1998), <u>citing</u> Pub.L. 98-473, §302, 1984 USCCAN (98 Stat.) 3182, 3374.

Given that the property was gifted to Carol Colombo in 1973, the Government cannot make any showing of the property's involvement in the activity alleged in the indictment.  Further, the Government cannot show that the property was purchased with funds derived from the activity alleged in the indictment.

In light of the foregoing, the Court should strike the portion of the indictment, placing Mr. Colombo on notice of the Government's intent to seek substitute forfeiture of the property located at 25 Horton Road, Blooming Grove, New York, due to its inability to prove the property's involvement in the alleged activity, and due to the Government's total inability to show the property to have been purchased with funds derived from the alleged activity.

## V.  MOTION FOR SUMMARY OF EXPERT TESTIMONY REGARDING REPUTATION

Rule 404(b) of the Fed.R.Evid. provides for disclosure of prior bad acts, which the Government intends to use at trial.  This rule was adopted to avoid undue surprise and the prejudicial effect of irrelevant criminal history.  For those same reasons, Counsel respectfully submits this motion for relief in two aspects: (1) that there should be a comparable notice in advance of trial of the general nature of the evidence the Government intends to introduce at trial, regarding reputation, under 18 USC §§ 892 and 894.

### A.  TESTIMONY REGARDING REPUTATION

Pursuant to 18 USC §892(b)(3), the Government may intend to offer proof of other claimed extensions of credit by Mr. Colombo that have been collected or attempted to have been collected by extortionate means from anyone other than the alleged victims in the case at hand.  There is no

reason why this material should be treated any differently than the manner prescribed for "prior bad acts" under Rule 404(b) of the Fed.R.Evid. This is particularly important where the evidence has a much more damaging purpose, namely proof of the character of Mr. Colombo, or any other defendant.

The same is true for 18 USC §894. Under this section, the Government may proffer proof that extensions of credit by Mr. Colombo, other than to the alleged victims, were collected or attempted to be collected by extortionate means.

The potential for undue surprise and prejudice from a failure to make a disclosure under these two sections, while requiring disclosure under Rule 404(b) of the Fed.R.Evid., would lead to inconsistent treatment of similar proof. If the purpose of these proceedings is to avoid prejudicial surprise, the same timetable that applies for the 404(b) demand should apply to disclosure of the nature of other crimes under 18 USC §§ 892 and 894.

Given that reputation evidence is presented to the jury solely by an individual who qualifies as an expert to report on the community's view of a defendant, the disclosure requirements relative to expert testimony are appropriately applied to such intended proof, pursuant to Rule 16(a)(G) of the Federal Rules of Criminal Procedure.

For the foregoing reasons, it is respectfully requested that the Government should be required to promptly provide a written summary of any reputation evidence it intends to offer in its case-in-chief, pursuant to 18 USC §§ 892 and 894.

## VI. MOTION TO STRIKE SURPLUSAGE
### PURSUANT TO RULE 7(d) Fed.R.Crim.P.
### and to PRECLUDE "LA COSA NOSTRA,"
### "COLOMBO BROTHERS CREW" OR "MAFIA" REFERENCES

## A. THE COURT SHOULD STRIKE SURPLUSAGE FROM THE INDICTMENT

The Court should strike those portions of the indictment which are likely to mislead and confuse the jury as "surplusage." Rule 7(d) of the Federal Rules of Criminal Procedure provides

that "Upon the defendant's motion, the court may strike surplusage from the indictment or information." While courts are reluctant to strike language from an indictment, the Court has the power to do so if it finds that such language serves no useful purpose and allows a jury to draw the inference that the defendant is accused of crimes not charged in the indictment. See *United States v Scarpa*, 913 F2d 993, 1013 (2d Cir.1990). To survive a motion to strike, the Government must show that the challenged references set forth evidence that was properly admissible and relevant. See *United States v Mulder*, 273 F3d 91, 99-100 (2d Cir.2001); *United States v Killeen*, 1998 US Dist. LEXIS 17134 (SDNY); *United States v Miller*, 26 FSupp 2d 415, 420 (NDNY 1998).

The Government, in the within indictment, includes paragraphs 3 – 10, which solely discuss Mr. Colombo's familial ties, as well as his past participation with the "Colombo Organized Crime Family." These paragraphs also contain detailed descriptions of the structure and operations of Italian organized crime, known as "La Cosa Nostra." Paragraph 11 reiterates allegations contained in previous paragraphs against Mr. Colombo, as well as articulates the alleged ties of defendants GERARD CLEMENZA, CHRISTOPHER COLOMBO, JOHN CONTINO, PHILIP DIOGUARDI, JOHN BERLINGIERI, and JOSEPH FLACCAVENTO to organized crime activity. In these same paragraphs, the Government discusses the "shelved" status of Mr. Colombo and GERARD CLEMENZA, while failing to make any connection between such history and the specific activity alleged in the indictment. The Government cannot show the relevance of such information to the allegations in this matter and therefore they must be stricken.

**B. EVIDENCE AND TESTIMONY REGARDING THE MAFIA**

The reputation of Mr. Colombo and other defendants, from the Government's point-of-view, is inextricably connected to "La Cosa Nostra," or the Mafia. The indictment contains a five page summary and description of the development and structure of "La Cosa Nostra," including descriptions of Mr. Colombo's (along with defendant GERARD CLEMENZA) history as a "made

member" of the Colombo Organized Crime Family. The summary lists Mr. Colombo's previous familial ties to the Colombo organization. The summary also outlines the alleged "Colombo Brothers Crew," a device – or moniker - used to describe a group of individuals whom have previously been investigated and/or charged with activities wholly separate and distinct from those charged in the within indictment. Yet the Government also describes Mr. Colombo and GERARD CLEMENZA as having a "shelved" status within the confines of organized crime. As the indictment outlines, a "shelved" member is totally devoid of any responsibilities, rights, privileges or qualities associated with the operational and structural hierarchy of organized crime.

The Government proffers Mr. Colombo's "shelved" status in the indictment. The Government further proffers a separation and distinction from Mr. Colombo's past, as also described in the indictment. Therefore, the Government clearly makes Mafia references only in an effort to impute prejudicial character evidence to Mr. Colombo. If the Government were to be permitted to make such references at trial, Mr. Colombo and other defendants would be unduly and irreparably prejudiced.

For the foregoing reasons, it is respectfully requested that the Government be precluded from making any reference to "La Cosa Nostra," the "Colombo Organized Crime Family," "the Colombo Brothers Crew," or any other such group, in the context of this wholly distinct and separate case. Any such references would be prejudicial evidence only introduced as proof of alleged character.

## VII. DEMAND FOR A BILL of PARTICULARS

Rule 7(f) of the Fed.R.Crim.P. states that the Court may direct the Government to file a bill of particulars. The function of a bill of particulars is to notify the defendant of the precise nature of the charges against him and thereby give him an opportunity to prepare his defense, as well as avoiding surprises at trial and to enable a defendant to interpose a plea of double jeopardy if

subsequently prosecuted for the same offense. *US v Aliperti*, 867 F.Supp 142 (EDNY 1994); see also *US v Leonad*, 817 F.Supp 286 (EDNY 1992). This district has even further articulated that the bill of particulars should be granted, if needed to apprize the defendant of the essential facts of an alleged crime. *US v Leonelli*, 428 F.Supp 880 (SDNY 1977). Further, where, as here, an indictment employs general terms, the defendant is entitled, under Rule 7(f) Fed.R.Crim.Pro., to seek "specific allegations of the offense charged." *United States v Wozniak*, 126 F3d 105, 110 (2d Cir.1997) While counsel understands that the bill of particulars is not intended to give a preview of evidence or the theory of the Government's case, (*US v Culoso*, 461 F.Supp 128 (SDNY 1978), *aff'd* 607 F2d 999) it should be granted in this matter, due to the circumstances herein.

We expect that the Government may argue that ordering a Bill of Particulars would provide defense counsel with "evidentiary detail" about its case. Counsel is well aware that a Bill of Particulars may not be used for such a purpose. See *United States v Torres*, 901 F2d 205, 234 (2d Cir.), *cert denied*, 498 US 906 (1990); *United States v Cephas*, 937 F2d 816, 823 (2d Cir.1991), *cert denied*, 502 US 1037 (1992). However, the Government cannot use that argument to avoid producing particulars in a case such as this. The Second Circuit has held that:

> "it is of no consequence that the requested information would have required the disclosure of evidence or the theory of the prosecution. While a bill of particulars 'is not intended, as such, as a means of learning the Government's evidence and theories,' if necessary to give the defendant enough information about the charge to prepare his defense, 'it will be required even if the effect is disclosure of evidence or of theories."

> *United States v Barnes*, 158 F3d 662, 665 (2d Cir.1998) *citing* Charles Alan Wright, Federal Practice and Procedure §129 (1982).

In the case at hand, Mr. Colombo has been indicted on several counts of extortion and gambling. Yet throughout the indictment, Mr. Colombo is only alleged to have committed one (1) overt act in the gambling conspiracy (Count Three), and no specific and/or overt acts in either racketeering conspiracy (Count One and Count Two). All other substantive counts contain no

information regarding Mr. Colombo's involvement. Given the breadth of this indictment, and the severity of punishment Mr. Colombo faces, it is necessary for the Government to provide a bill of particulars as to Mr. Colombo's involvement in each and every count of this indictment. Without a bill of particulars, Mr. Colombo can not adequately prepare for trial in this matter. Therefore, it is respectfully requested that the Court Order the Government to supply a bill of particulars as set forth below:

1. The date, time and place defendant ANTHONY COLOMBO allegedly joined the conspiracy as set forth in Counts 1 and 2 (Racketeering) of the indictment, as well as acts or statements indicating that he joined said conspiracy;

2. The exact acts and dates of acts attributable to defendant ANTHONY COLOMBO, evidencing his role in the conspiracy as set forth in Counts 1 and 2 of the indictment;

3. The date, time and place defendant ANTHONY COLOMBO allegedly joined the conspiracy as set forth in Counts 20, 21 and 23 (Extortion) of the indictment, as well as acts or statements indicating that he joined said conspiracy;

4. The exact acts and dates of acts attributable to defendant ANTHONY COLOMBO evidencing his role in the conspiracy as set forth in Counts 20, 21 and 23 of the indictment;

5. The exact acts and dates of acts ANTHONY COLOMBO allegedly committed in furtherance of all counts of the indictment charging Mr. Colombo with Extensions of Credit by Extortion, in violation of 18 USC §§ 892 and 894;

6. The exact acts and dates of acts ANTHONY COLOMBO allegedly committed in furtherance of all counts of the indictment charging Mr. Colombo with Collection of Credit by Extortion, in violation of 18 USC §§ 892 and 894;

7. The date, time and place defendant ANTHONY COLOMBO allegedly joined the conspiracy as set forth in Counts 3 and 25 (Gambling) of the indictment, as well as acts or

statements indicating that he joined said conspiracy;

8. The exact acts and dates of acts attributable to defendant ANTHONY COLOMBO, evidencing his role in the conspiracy as set forth in Counts 3 and 25 of the indictment;

9. The exact acts and dates of acts of ANTHONY COLOMBO allegedly committed in furtherance of all counts of the indictment charging Mr. Colombo with Gambling and offenses in furtherance of Gambling, in violation of 18 USC §§ 1955, 1084;

10. The exact acts and dates of acts of ANTHONY COLOMBO allegedly committed in furtherance of all counts of the indictment charging Mr. Colombo with Fraud and offenses in furtherance of Fraud, in violation of 18 USC §1341.

11. Set forth a full accounting of how the Government arrived at the allegation contained in paragraph 72(a), or Forfeiture Count, of the Indictment. To wit: That certain defendants acquired and maintained "at least $10,000,000," in interests by and through the racketeering activity alleged in the Indictment.

WHEREFORE, it is respectfully requested that the Court Order the Government to provide a bill of particulars to counsel as to Mr. Colombo's alleged involvement in each and every count of charged in the indictment.

### VIII. MOTION FOR THE GOVERNMENT TO GIVE NOTICE OF ITS INTENTION TO USE EVIDENCE OF OTHER CRIMES, WRONGS OR BAD ACTS UNDER FED. R. EVID. 404(b)

Defendant ANTHONY COLOMBO, respectfully moves this Court to order the Government to provide him with notice of its intention to use evidence of "other crimes wrongs or acts" of the defendants, as that phrase is used in Fed. R. Evid. 404(b), and of the general nature of any such evidence it intends to introduce at trial.

Rule 404(b), Fed. R. Evid., reads as follows:

(b) other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, <u>provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial</u>. (Emphasis added)

According to *United States v. Garcia*, 291 F3d 127, 136 (2d Cir.2002), the Government should be required to provide a defendant with notice of its intention to use evidence of other crimes or wrongful acts, and to disclose the general nature of any such evidence it intends to introduce at trial in order to reduce the risk of unfair surprise and prejudice, *Mitchelson v. United States*, 355 U.S. 469 (1948) (purpose of excluding other crimes evidence is to prevent unfair surprise and prejudice); *United States v. Avarello*, 592 F.2d 1339 (5th Cir.) (inherent danger of other crimes evidence is that defendant will be convicted, not on basis of evidence of charged offenses, but because he is a "bad man"), *cert. denied*, 444 U.S. 844 (1979), and to permit early resolution of the admissibility of other crimes evidence so a s to minimize reversible trial error for wrongful admission of such evidence. <u>See</u> *United States v. Foskey*, 636 F.2d 517, 526 n.8 (D.C. Cir. 1980) (reasoning that pretrial notification of intent to use evidence of prior bad acts … might obviate the need for the District Court, as well as the Court of Appeals, to speculate regarding the Government's theory of the evidence's relevance to the issues listed in Rule 404(b)); *cf. United States v. Fortenberry*, 860 F.2d 628 (5th Cir. 1988) (reversal of conviction due to prejudicial admission of other crimes evidence).

Given the policies advanced by early notification of the Government's intent to use other crimes evidence, the defendant respectfully requests that his instant motion be granted.

### IX.  MOTION *In Limine*, TO PRECLUDE REFERENCES TO "OTHER CRIMES" AND UNCHARGED MISCONDUCT, PURSUANT TO RULES 103, 104, 403, 404(b), 608 AND 609 FED. R. EVID.

The defendant, ANTHONY COLOMBO, by and through his undersigned attorneys, respectfully moves this Court before trial *in limine* pursuant to Rules 103 and 104 of the Federal

Rules of Evidence for an Order instructing the attorney for the Government, his representatives and witnesses to refrain from making any direct or indirect reference whatsoever, at a trial before the jury of any other extraneous crimes, convictions, or misconduct by the defendant or other defense witnesses other than those specifically set out in the Indictment until a hearing has been held outside the presence of the jury *in limine* to determine the following:

(1) Whether defendant or witness was formally charged and convicted within the past ten (10) years of said criminal conduct and said conviction carried a maximum punishment of more than one (1) year or said criminal offense involved dishonesty or false statements and would be admissible for impeachment purposes pursuant to Rule 609, Fed. R. Evid.

(2) If no conviction and not offered for impeachment purposes, then whether said "other crimes" or misconduct fits one of the exceptions to the general rule excluding such evidence tending to prove general character pursuant to Rule 404(b), Fed. R. Crim. Proc., and then only in rebuttal.

(3) Even if said "other crimes" were to constitute one of the 404(b) exceptions, whether its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading, unnecessary or cumulative pursuant to Rule 403, Fed. R. Evid.

And as grounds therefore the defendant would respectfully show unto this Court the following:

Defendant, ANTHONY COLOMBO, does in fact intend to take the stand and testify in his own behalf in this trial and may call witnesses on his behalf.

Should the attorney for the Government, his representative, or his witness be allowed to introduce evidence, make reference to, cross-examine the defendant, or defense witnesses, with respect to, or otherwise leave the jury with an impression with respect to any other extraneous crimes or misconduct by the defendant or his witnesses other than those specifically set out in the Indictment presented herein, would allow the attorney for the Government to get before the jury facts that the defendant or other defense witnesses committed other and extraneous offenses than the one for which he is on trial herein. Said extraneous offenses which are remote in time and which are not relevant to the question of the defendant's or other defense witnesses' truthfulness

and veracity would further allow the attorney for the Government to get before the jury other crimes which do not constitute an exception to the rule against such general character evidence; or which is prejudicial or not needed by the Government in their case-in-chief; or which is immaterial and unnecessary to the disposition of this case.

Any ordinary objection during the course of trial even sustained with proper instructions to the jury will not remove such effect in view of its highly prejudicial content.

For these reasons, defendant ANTHONY COLOMBO prays that this Court order and instruct the attorney for the Government, its representatives and witnesses not to elicit or give testimony respecting, allude to, cross examine respecting, mention, or refer to any misconduct or alleged violations of the law, and to instruct the attorney for the Government, his representatives and witnesses not to elicit or give any testimony respecting, cross examine respecting, mention, or refer to any prior convictions in the presence and hearing of the jury until a hearing has been held outside the presence of the jury to determine relevance and admissibility.

## A.  OTHER CRIMES UNDER RULE 104(C)

With respect to "other crimes" evidence offered against the defendant, Rule 104(c) of the Federal Rules of Evidence expressly mandates that "[H]earings on … preliminary matters" such as the admission of evidence of criminal conduct other than that charged in the indictment "shall be … when the interests of justice require or, when the accused in a witness, if he so requests." Defendant has so requested.

## B.  RULE 103(c)

More importantly, Rule 103(c) of the Federal Rules of Evidence requires that to the extent practicable "… so as to prevent inadmissible evidence from being suggested to the jury **by any means**, such as making statements or offers of proof or asking questions in the hearing of the jury" any hearings or proceedings thereof should be conducted out of the hearing of the jury.

By its own language, the "clear purpose" of this rule is "to prevent inadmissible evidence form being suggested to the jury by any means," 1 Louisell, <u>Federal Evidence</u>, Section 13, at p. 77 and "the prosecution should be required to make a proffer of other crimes evidenced outside the hearing of the jury." 2 Louisell, <u>supra</u>, Section 140, at p. 120.

This requirement of an "offer of proof" of such inherently prejudicial "other crimes" evidenced outside the hearing of the jury has the salutary effect of shielding the jury from potentially inadmissible and prejudicial evidence, provides the Trial Court with an opportunity to thoughtfully balance the probative value against the prejudicial impact and allows the trial court to make a determination as to whether it might be more desirable to defer admitting such evidence until the Government's rebuttal. *United States v. Bailey*, 505 F.2d 417 (D.C. Cir. 1974), *cert. denied*, 420 U.S. 961. *See also United States v. Wolf*, 561 F.2d 1376 (10th Cir. 1977) at p. 1376 and 1382 (dicta).

> "[T]he trial judge should not have made even a preliminary ruling on the admissibility of the other offenses evidenced in the Government's case-in-chief without requiring a proffer of that evidence out of the hearing of the jury. First, as with the banning of the mention of other offenses in opening statements, it shields the jury from potentially inadmissible prejudicial evidence.
>
> Secondly, it gives the trial judge a basis on which to balance the probative value against the prejudicial effect of the evidence. Finally, it allows the trial judge to probe as to whether it might be more desirable to defer admitting the evidence until the Government's rebuttal." *United States v. Bailey*, <u>supra</u>, at p. 420.

## C. IMPEACHMENT UNDER RULE 609

In order for an offense to be admissible for impeachment purposes, Rule 609 requires evidence that the witness was in fact "convicted of the crime" [and released from confinement, if any, within the previous ten (10) years] and that such offense is "punishable by death or imprisonment in excess of one year [and the Court determines the probative value outweighs its

prejudicial effect] or that such offense involved "dishonesty or false statement" regardless of the punishment.

## D.  OTHER CRIMES UNDER RULE 404(b)

While evidence of "other crimes" is not admissible "to prove the character of a person in order to show he acted in conformity therewith."  Rule 404(b), Fed. R. Evid., the Rule sets out specific exceptions regarding certain issues, which would warrant admission of such evidence. However, such issue [eg. intent, identity, motive, etc.] must in fact be raised by the evidence, and there must be a genuine need for such "other crimes" evidenced by the Government on that particular issue.  *United States v. Garcia*, 291 F3d 127, 136 (2d Cir.2002); *United States v. Silva*, 580 F.2d 144 (5th Cir. 1978); *United States v. Beechum*, 587 F.2d 443 (5th Cir. 1978).

## E. THE BALANCING TEST OF RULE 403

In any event, regardless of whether such evidence meets an exception such as set out in Rule 609 or 404(b) the Court must nevertheless exclude such evidence entirely, where its probative value is outweighed by its prejudicial impact, confusion of the issues, misleading the jury or is cumulative.  Rule 403, Fed. R. Evid., and the probative value and any corresponding legitimate need by the Government to proffer such evidence becomes "slight" where evidence relating to the issue in dispute could be established by other evidence, stipulations or is not contested by the defendant.  *United States v. Beechum*, supra, *see also United States v. Garcia*, supra.

## CONCLUSION

Accordingly, in order to determine these issues, this Court should require the attorney for the Government to proffer any evidence of "other crimes or misconduct" for ruling as to admissibility and objection, if any, to the Court, out of the hearing of the jury.

## F.  404(b) EVIDENCE

In order to avoid surprise at trial it is necessary that the government promulgate its intentions in this regard when viewed in a Rule 16 context; given Second Circuit decisions such as *United States v. Baum*, 482 F.2d 1325 (1973).

In the instant case "intent" is a critical issue and this motion is appropriate and necessary. The basic guidelines for determining whether evidence or prior crimes may be admitted as evidence at trial can be found in the Federal Rule of Evidence 404(b), which provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

After alluding to Rule 404 of the Federal Rules of Evidence, the Second Circuit in *United States v. Benedetto*, 571 F.2d 1246, 1248-1249 (2d Cir.1978), suggested that trial courts take the following approach when ruling on the admissibility of evidence of prior crimes:

> "This does not mean, however, that evidence of similar acts is automatically admissible. The Government must do more than demonstrate that the evidence is not solely offered to show that the defendant is a bad person.  Stopping the analysis there would ignore the fundamental precept that any evidence must be relevant to some issue in the trial.  There is no presumption that evidence of other crimes is relevant to any issue in a criminal trial, although it often will be.  See 2 Weinstein's Evidence ¶ 404[09], at 404-41 to –43 (1976). Once the trial judge has decided that the evidence is relevant, under our cases and under Federal Rules of Evidence 403, the judge must still weigh the probative value of the principally 'unfair prejudice.'  The danger is that once the jury is told of the defendant's other crimes, the jury will impermissibly infer that he is a bad man likely to have committed the crime for which he is being tried.  Moreover, we have emphasized that admission of such strongly prejudicial evidence should normally await the conclusion of the defendant's case, since the court will then be in the best position to balance the probative worth of, and the Government's need for, such testimony against the prejudice to the defendant.  See United States v. Leonard, 524 F.2d 1076, 1092 (2d Cir. 1975), cert. denied, 425 U.S. 958, 96 S.Ct. 1737, 48 L.E.D.2d 202 (1976); cf. United States v. Robinson, 560 F.2d 507, 515 (2d Cir. 1977) (en banc) (admission of prejudicial evidence properly 'delayed …until virtually all of the other proof had been introduced…'); United States v. Kaufman, 453 F.2d 306, 311 (2d Cir. 1971) (court pointed out that 'Government did not offer the evidence in its main case on an issue not yet pressed by the defendant…')."

Criminal intent has been defined "as that state of mind, which negates accident, inadvertence or casualty." Slough, "Relevancy Unraveled," 6 Kan. L.Rev. 38, 48 (1957); see also, 2 Weinstein's Evidence, ¶ 404[12], at 4040-65 (1980). Accordingly, evidence of another crime, which tends to undercut the defendant's innocent explanation for his act may be admitted. The Second Circuit, however, had held that there is no issue of intent where the defendant claims he did not do the charged act at all, rather than claiming he did it innocently or mistakenly. See, *United States v. Mohel*, 604 F.2d 748 (2d Cir. 1979) (In a case where the defendant was charged with the sale of cocaine, he claimed he never had the cocaine and offered to stipulate intent and knowledge out of the case. It was reversible error to admit evidence of other crimes to prove intent.*); United States v. Manafzdeh*, 592 F.2d 81 (2d Cir. 1979) (In the prosecution of a defendant for transporting falsely issued checks in interstate commerce, the defendant denied that he had anything to do with the creation or deposit of the fraudulent checks. The Court held that it was reversible error to have admitted other subsequent crimes as evidence as relative to intent); *United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978) (In the prosecution of a former Government meat inspector for taking money from meat packing companies in connection with his official duties, the defendant claimed that he never took any money. Therefore, intent was not an issue and was reversible error to admit evidence of other bribe receiving.); *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) (The defendant-meat inspector was indicted for receipt of money from four packing companies. The defendant "claimed that he did not take the money at all. Knowledge and intent, while technically at issue, were not really in dispute."); *United States v. Gobelman*, 571 F.2d 1252 (2d Cir. 1978) As was stated in *United States v. Williams*, 577 F.2d 188, 189 (2d Cir. 1978), "other crimes evidence is inadmissible to prove intent when that issue is not really in dispute."

Here, the defendant, ANTHONY COLOMBO, denies guilt in the all counts of the indictment lodged against him.

Furthermore, it cannot be stressed enough that even when the proffered evidence of other crimes has some probative value in proving something other than the defendant's propensity to commit the crimes charged in the indictment, the admission of evidence of other crimes does not follow as a matter of course. Rule 404 merely provides that the evidence <u>may</u> be admissible. The trial court must still determine whether the danger of undue prejudice outweighs the probative value of the proposed evidence, especially in view of the availability of means of proof. See, generally, 2 Weinstein's Evidence ¶ 404[18] , 404-99 to 404-113 (1980). Rule 403 of the Federal rules of Evidence specifically provides:

> "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

For the above stated reasons, it is respectfully requested that the Court prohibit the prosecutor from introducing evidence at trial of the defendant's prior acts, if any.

### X.  MOTION FOR HEARING REGARDING GOVERNMENT'S ALLEGATIONS REGARDING ANY "CODED" CONVERSATIONS

It is anticipated that a substantial portion of the Government's case in this matter will consist of wiretap telephone conversations allegedly among the defendants, coconspirators and others. The Government's contention obviously will be that various of these conversations were conducted in  "code" so as to disguise the true meaning of their content – which the Government suggests were related to racketeering, extortion and gambling.

It is respectfully submitted that insofar as the Government seeks to introduce into evidence conversations allegedly conducted in "code," it should be required to come forward at this time to

demonstrate: (a) the factual basis for its determination that the conversations were held in "code" and the meanings it ascribes to the various words and phrases allege to be in code in the conversations, and (b) the qualifications of the expert(s) whom it intends to offer to testify as to the meaning of the "codes." Absent such disclosure at this preliminary juncture, defendants will be irreparably prejudiced in their ability to properly prepare prior to trial and confront the allegations to be made against them at trial. As former Chief Judge Weinstein has stated, in precisely this context, "[s]urprise by experts [in a criminal case] should not be permitted." 3 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 705[01] at 705-10 (1981).

Here, the testimony (and underlying evidence) sought to be introduced will concern telephone conversations allegedly in code to disguise their incriminating nature. Clearly, such conversations (and the critical inferences to be derived therefrom) may well be expected to form the linchpin of the Government's case against many of the defendants on trial herein. Under the circumstances, then, it is absolutely crucial that defendants be informed pretrial of the precise nature and content of the Government's allegations with respect to any and all "coded" conversations sought to be admitted at trial in this matter.

Moreover, it is essential that the Court hold a pretrial hearing to determine both the factual basis (and accuracy) as of the Government's proposed proffer as well as the qualifications of the expert whom it purports to have testify in this regard. Accordingly, defendants should be granted a pretrial hearing with respect to the Government's prospective testimony with respect to "coded" conversations sought to be admitted at trial.

# XI. MOTION FOR HEARING TO DETERMINE INTELLIGIBILITY OF TAPES AND ACCURACY OF LINESHEETS

The defendant, ANTHONY COLOMBO, by and through his attorney, respectfully moves this Court pursuant to the Fifth and Sixth Amendments to the United States Constitution, and Federal Rule of Criminal Procedure 104(c), to hold a pretrial hearing to determine the audibility of any tape recording that the Government intends to offer against him at trial, as well as the accuracy of any linesheets and transcripts thereof. In support thereof, the defendant shows the following:

The admissibility of tapes and transcripts, which allegedly contain recordings of an accused's voice at the trial against him, is evidence that is critical to the question of that defendant's innocence of guilt.

Denial of a pretrial hearing on these matters would unduly prejudice this defendant and deny him the constitutional protection provided by the Fifth and Sixth Amendments to the United States Constitution.

WHEREFORE, the defendant respectfully prays that this Court hold a hearing to determine the intelligibility of the tapes and the accuracy of the linesheets and transcripts, and for such other and further relief as this Court may deem just and proper.

In cases involving the use of tapes and transcripts, it is imperative to determine the audibility of the tapes and the accuracy of the transcripts before commencing the trial on the merits. This procedure is recommended by the United States Court of Appeals for the Fifth Circuit. *United States v. Greenfield*, 574 F.2d 305 (5th Cir. 1978), *cert. denied*, 99 S.Ct. 178, 439 U.S. 860. Further, as stated in a previous motion, this measure is necessary for the Court to determine the admissibility of crucial evidence against the defendants, which has been prepared and disclosed to Counsel in a manner wholly impractical.

## XII. MOTION TO COMPEL THE GOVERNMENT TO DISCLOSE THE IDENTITY OF INFORMANTS, THEIR DATES OF BIRTH, CRIMINAL RECORDS, IF ANY, AND ALL RELATED MATERIAL, PURSUANT TO *ROVIARO V. UNITED STATES*

In the instant case, documents turned over by the Government in its initial and voluntary disclosure packages, indicate that the Government has secured the cooperation of alleged co-conspirators on the extortion and gambling charges. These documents also clearly indicate that there were key figures other than defendant ANTHONY COLOMBO.

Assuming *arguendo* that is so, it can be reasonably anticipated by Counsel that the testimony of such informants would be critical to the Government's proof at trial, and that Mr. Colombo was intricately involved in the extortion and gambling as charged in the indictment, and was a knowing participant in the conspiracies thereof.

It is therefore strenuously urged by Counsel that the confidential informant and/or informants, are critical witnesses as to the truth of whether in fact, the defendant, ANTHONY COLOMBO, knowingly participated in the charged crimes and with knowledge as to the aims of the conspiracies, and the scope thereof. Accordingly, the Supreme Court has held that discovery should be granted where the informant or informants are material on the issue of guilt or innocence. *Roviaro v. United States*, 350 U.S. 53, 77 S.Ct. 623 (1957).

As far as the identities, their identities are relevant and discoverable to the defense pursuant to *Brady v. Maryland*, in that cross-examination of them would prove that Mr. Colombo lacked sufficient culpability to be criminally responsible for the charges in the within indictment.

It has also been held in *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971) that the prosecution must take reasonable steps to locate material witness informants. It is also well settled and the Supreme Court has held that the Government must disclose an informant's identity in cases where Government must disclose an informant's identity in cases where the informant

actively participated in or was a percipient witness to the underlying act or transaction, which serves as the basis of the prosecution.

> Although the *Roviaro*, supra decision, was based on the court's supervisory powers, commentators suggest that holding to be constitutionally compelled.  See Weston, The Compulsory Process Clause, 73 Mich. L.Rev. 71, 165 (1974).

## XIII.  MOTION FOR ORDER PERMITTING THE
## DEFENSE TO INTERVIEW THE INFORMANTS
## PURSUANT TO  *UNITED STATES V. SAA*

Upon information and belief and as set forth previously in this motion, the defense believes that the Government will call one or more confidential informants at trial.  However, upon information and belief, the defense believes that it is possible that said confidential informant or informants, may not be called by the Government on it's direct case at trial, and may be reserved for rebuttal.

In any event, in that Counsel herein verily believes that ANTHONY COLOMBO was not criminally liable for the crimes charged, nor for the aims and scope of the charged conspiracy, it therefore becomes vital that the defense herein be given an opportunity to interview said Government informants.

Further, since the defense is not privy to the Government's trial strategy, and the inter-workings of the Government's investigation, this statement cannot be made with certitude.  It is for this reason that the within motion is made.

Consequently, pursuant to *United States v. Saa*, 859 F.2d 1067 (2d Cir. 1988), the defense requests that in the event the Government elects to refrain from calling any or all of the confidential informants as witnesses at trial, it be permitted the opportunity to speak with either or all, for the purpose of determining if they are willing to be interviewed by defense counsel.

As the *Saa* Court noted, the preferable procedure in this situation is to permit the attorneys to personally, in the presence of the Government, if the Court deems same necessary, to ask the

informants if they are willing to speak with defense counsel.  This motion is made prospectively only.  If all confidential informants involved in this investigation are called as witnesses by the Government in their direct case, then this motion will obviously be moot, and will be withdrawn as such.

## XIV.  MOTION TO REQUIRE FULL DISCLOSURE OF ANY AND ALL *GIGLIO* MATERIAL

The defendant, by and through his attorneys, respectfully requests this Court to require the Government to reveal the nature of its relationship to any witnesses or potential witnesses, co-defendants or unindicted co-conspirators in this case.

Disclosure of the relationships between witnesses or potential witnesses and the prosecution or agencies of the Government is necessary to afford the defendant his right to cross-examination.  Knowledge of any concession or threats made to any witness is vital to a full exploration of the motive, bias and credibility of the testimony.  *U.S. Constitution,* Amendments VI and XIV §2.

Without information about the prosecution's or other Government agencies' relationship with witnesses or potential witnesses, Counsel cannot effectively advise or defend its client.

The defendant's right to effective assistance of counsel, cross-examination and due process of law requires such disclosure to protect the defendant's right to a fair trial.  *US Constitution,* Amendments V, VI and XIV § 2.

WHEREFORE, the defendant prays that this Court require the prosecution to reveal whether:

1.      Any witness has been a paid informer.

*2.*      Any witnesses has been promised immunity from prosecution for admissions made in connection with this case.

*3.* All other discussions, negotiations, concessions, threats, promises express or implied, or coercive tactics which have transpired between the prosecution or government agencies and any witness, potential witness or their representatives and for any other relief as may be equitable or necessary.

*4.* Any relationship exists between the Government and any witness, potential witness or informant to be inclined, encouraged or perceive some personal benefit in response to the Government or defendant's request for information or testimony.

5. It is respectfully requested that such information be supplied regarding any deceased individuals who have been engaged in any kind of cooperation with respect to the case at hand.

The evidence of any promises or representations which have been made by the Government or which the Government will make at any future time is discoverable pursuant to the Due Process clause of the Fifth and Fourteenth Amendments to the Constitution. The withholding of any such evidence constitutes a denial to defendant herein of the Constitutionally protected rights to due process and fundamental fairness in the criminal proceedings brought against him. *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, supra. Such evidence is not only exculpatory in the sense that it is legitimate grounds for impeachment of any witnesses the Government may call to testify against the defendant, *Williams v. Dutton*, 400 F2d 797 (5th Cir. 1968) (impeachment evidence discoverable under *Brady*) but also is discoverable by defendant in order to show such witnesses' bias or prejudice in testifying at trial. *Davis v. Alaska*, 415 U.S. 308. See also, *United States v. Joseph*, 533 F2d 282 (5th Cir. 1976); *Reed v. General Motors*, 773 F2d 660 (5th Cir. 1985).

WHEREFORE, the defendant, respectfully moves this Court to order the production of the above described papers, documents, and information now in the possession of the Government, or

which through reasonable diligence could be obtained or located, and for such other and further relief as this Court should deem just and proper.

## XV.  MOTION TO DISCOVER EXCULPATORY EVIDENCE PURSUANT TO *BRADY v MARYLAND*

The defendant, ANTHONY COLOMBO, by and through his attorneys, respectfully requests this  Court to instruct the United States Attorney or his Assistant to reveal all exculpatory evidence or evidence which might mitigate punishment in this cause.  Further, defendant would ask the Court to require the United States Attorney or his assistant to thoroughly question all law enforcement agents who participated in the investigation and preparation of this case to determine if there exists any exculpatory or mitigating evidence.

The defendant would assert that he has the right to discover exculpatory evidence and evidence in mitigation by virtue of his rights to effective assistance of counsel, to cross-examine, due process and equal protection.  United States Constitution Amendments V, VI and XIV §2.

This right would include the right to discover all notes or statements acquired or prepared by the State in this case which contain or would lead to exculpatory evidence.

In addition, the defendant would request that the Court inspect the Government's files and question the United States Attorney or his assistant to determine if there is any exculpatory or mitigating evidence in his files.  The Court is also requested to make findings of fact and the Government's files a part of the appellate record.  WHEREFORE, the defendant prays that this Motion be granted in all things and for such other and further relief as this Court deems equitable and necessary.

The exculpatory or favorable evidence requested herein is discoverable pursuant to the Due Process clause of the Fifth and Fourteenth Amendments to the Constitution.  *Brady v. Maryland*, 373 U.S. 83 (1963).

This right of defendant to disclosure of "favorable evidence exists whether such evidence is material to the defendant's guild or to mitigation of his punishment," *Brady v. Maryland*, 373 U.S. 813 (1963) at p. 87, and regardless of whether such exculpatory evidence would be admissible in defendant's behalf at trial "… or in obtaining further evidence." *Giles v. Maryland*, 386 U.S. 66 (1967) at p. 74. *United States v. Gleason*, 264 F. Supp. 850 (S.D.N.Y. 1967) at Page 886.

This right to disclosure under *Brady* should include the right to pretrial discovery by defendant. *United States v. Gleason*, 265 F. Supp 880 (S.D.N.Y. 1967) at p. 884-885; *United States v. Morrison*, 43 F.R.D. 266 (ND Ill. 1967); *United States v. Ahmad*, 53 FRD 186 (M D Pa. 1971) at p. 193-194; *United States v. Joseph*, 533 F.2d 282 (5th Cir. 1976); *Reed v. General Motors*, 773 F.2d 660 (5th Cir. 1985).

Further, where exculpatory evidence is obtained in a statement of a Government witness, discoverable under the *Jencks Act* only after the witness has testified, then the *Jencks Act's* "…statutory restrictions must be accommodated to the demands of due process," and the relevant portions of the statement disclosed prior to trial. *United States v. Gleason*, 265 F. Supp. 880 (S.D.N.Y. 1967) at p. 887. *Brady* and its progeny require that the Government provide the defendant with the exculpatory, mitigating or favorable evidence not in possession of the defense. Consequently, if the defense is unaware of such evidence, it would be hard pressed to request same with any particularity. If the defense does not know of the existence of the evidence, it may not be able to request its production. "A murder trial – indeed any criminal proceeding – is not a sporting event." (Fortis, Jr. concurring) *Giles v. Maryland*, 386 U.S. 66 (1967).

The United States Attorney or other agents of the United States Government involved in the investigation and preparation of this case have the possession, custody or control of all notes and files used in preparation of this case, or through the exercise of reasonable diligence would be able to obtain such possession or locate the whereabouts of such items or information. The United

States Attorney or his assistants should be required to review all notes and files used in preparation of this case and to determine if there is any exculpatory or mitigating evidence in said files. The United States Attorney or his assistant should be required to question all law enforcement agents who participated in the investigation and preparation of this case to determine if any exculpatory or mitigating evidence exists.

## XVI.  MOTION FOR EARLY DISCLOSURE
### OF *JENCKS ACT* MATERIAL

The defendant, ANTHONY COLOMBO, by and through his attorneys, respectfully moves this  Court to order this Government to disclose all statements and reports within the meaning of the *Jencks Act,* 18 USC §3500, not less than three weeks prior to the commencement of the trial in this case.  As grounds therefore, the defendant asserts the following:

This case has been deemed a complex case involving extensive wiretaps and multiple defendants.  Many New York State and Federal law enforcement officers participated in an extensive investigation generating hundreds of reports and documents.  Time the defense requires to review and assimilate these documents is greater and therefore early production is warranted.

Production of *Jencks Act* material at trial will necessitate extensive delays during trial to allow Counsel an opportunity to review said material prior to cross-examination of Government witnesses.

The Court has the authority to structure the trial to assure fairness to all parties.

Strict application of the *Jencks Act* violates the following constitutional guarantees:

1.      Meaningful cross-examination and confrontation of Government witnesses.  The defendants rarely know prior to trial, who the Government witnesses are and, therefore, cannot conduct any pretrial investigation of their character, veracity and reputation.

2.     Compulsory process to trial, if the Government does not disclose the existence of witnesses favorable to the defendant.

3.     Effective assistance of counsel.  Literal adherence to the *Jencks Act* requires defense counsel to "shoot from the hip" and precludes careful planning of defense strategies prior to trial.

4.     A fair trial.  Strict adherence to the *Jencks Act* coupled with the meager discovery rules renders ineffective any attempt to create a viable trial strategy until the trial is well under way.

Disclosure of information impeaching a witness' credibility must be timed to enable effective preparation of trial.  *United States v. Ploisi*, 416 F.2d 150, 573-578 (2nd Cir. 1969); *United States v. Baxter*, 492 F. 2d 150, 173-174 (9th Cir. 1973), *cert. denied*, 417 U.S. 940 (1974). <u>See</u>, *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979).  As pointed out in *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976) (Lumbard, J., sitting by designation):

> "Disclosure by the Government must be made at such time as to allow the defense to use the favorable material effectively in preparation and presentation of its case, even if satisfaction of this criterion required pretrial disclosure, <u>See</u>, <u>e.g.</u>, *United States v. Ellmore*, 423 F.2d 775, 779 (4th Cir. 1970); *United States v. Deutsche*, 373 F. Supp. 289, 290-291 (S.D.N.Y. 1974)."

> <u>See also</u>, *Grant v. Alldredge*, 498 F.2d 376, 282 (2nd Cir. 1974): *Clay v. Black*, 479 F.2d 319 (6th Cir. 1973) (*per curiam*).

In other circuits, the prosecution must produce requested evidence, which is materially favorable to the accused either as a direct or impeaching evidence.  The appropriate time is a early as possible to enable defense counsel effectively to use it in preparing the case for trial.  Compare *United States v. Campagnuolo*, 592 F.2d 852 (5th Cir. 1979), with *United States v. Opague*, 589 F.2d 799 (5th Cir. 1979).  Indeed, even when the favorable information takes the form of a witness' statement otherwise protected from pretrial discovery by the *Jencks Act* (18 USC §3500), the

prosecution must nonetheless disclosure it as far in advance of trial as due process may practically required for the defense to make fair use of it. *United States v. Campagnuolo*, <u>supra</u>.

In Moore's <u>Federal Practice</u>, it is stated that "although the literal terms of the statute do not require the Government to turn over '3500 material' until the witness has testified, where there is a large volume of such material the Court should require a turnover in advance of the testimony to avoid delaying the trial while counsel pursues the material" (Section 16.10(1) at p. 177).

In the event this motion is denied, defendant further requests that the government comply with the dictates of the *Jencks Act* by tendering all such material to defense counsel outside the presence of the jury.

As stated in *Gregory v. United States*, 369 F.2d 191 (D.C. Cir. 1966);

"It is familiar law that prior consistent statements are not admissible in evidence, and consequently it is improper to require a procedure, in exercising Jencks Act rights, which may permit the inference that the prior statements received are consistent with the witnesses' testimony on trial. We perceive no reason, other than to prejudice the defendant in the exercise of his Jencks Act rights, to require defense counsel to request and receive Jencks Act statements in the presence of the jury."

## XVII. <u>MOTION FOR DISCOVERY AND INSPECTION</u>

The defendant, ANTHONY COLOMBO, by and through his attorneys, respectfully moves this Court pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the "due process" clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States, and *Brady v. Maryland*, 373 U.S. 83 (1963), to Order the Government to produce for inspection and copying the following which are known to or are in the possession of the Government or any of its agents or which through due diligence would become known from the investigating officers, or witnesses or persons having knowledge of this case.

Specifically, all tangible items, documents, alleged paraphernalia, or the like, taken from the defendant, ANTHONY COLOMBO's, home, place or places of business, or motor vehicles within his dominion and control and/or legally registered to him.

1.    NOTICE OF EVIDENCE SUBJECT TO SUPPRESS:

NOTICE OF THE GOVERNMENT'S INTENTION TO USE ANY EVIDENCE (IN ITS CASE-IN-CHIEF AT TRIAL) WHICH THE DEFENDANT MAY BE ENTITLED TO SUPRESS UNDER RULE 4(a), 12 OR 41 OF THE FEDERAL RULES OF EVIDENCE, THE FOURTH, FIFTH OR SIXTH AMENDMENTS OF THE CONSTITUTION, 18 U.S.C. 2510-20 AND 3504 (TITLE III OF THE OMNIBUS CRIMINAL CONTROL ACT), AND IF STATE AGENTS WERE INVOLVED ARTICLE 1 SECTION 12 OF THE NEW YORK STATE CONSTITUTION AND CRIMINAL PROCUEDURE LAW SECTION 710.20(a)(1)(3).

Rule 12(d) of the Federal Rules of Criminal Procedure provide for notice of evidence "at the arraignment or as soon thereafter as is practicable… in order to afford an opportunity to move to suppress evidence…"  Defendant now requests such notice in order to comply with Rule 12(b)(3), Fed. R. Crim. P.'s requirement that motions to suppress be raised prior to trial.


2.    NOTICE OF OTHER CRIMES OR UNCHARGED MISCONDUCT:

ANY AND ALL "OTHER CRIMES" OR UNCHARGED MISCONDUCT WHICH THE GOVERNMENT INTENDS TO OFFER EITHER IN ITS CASE-IN-CHIEF OR IN REBUTTAL WHICH MAY BE OBJECTIONABLE EITHER UNDER RULE 403 OR 404 OF THE FEDERAL RULES OF EVIDENCE.

Simultaneous with this motion defendant has moved *in limine* for an order directing the U.S. Attorney or his agents to avoid any reference whatsoever before the jury of "other crimes" or uncharged misconduct prior to a ruling from this Court.  Counsel will be unable to specifically object to the admission of such evidence and this Court will likewise be unable to rule on such objections until the Government discloses those "other crimes" or uncharged misconduct it intends to attempt to introduce or insinuate into evidence and which it has indicated exist in its Government's Response in Compliance [to Court's General Order of Discovery].  Accordingly, in

the interest of judicial economy and in order to ensure defendant's right to effective assistance of counsel by providing the undersigned with an opportunity to prepare to respond to the Government's introduction of "other crimes" or uncharged misconduct, the Court should order the Government to disclose same prior to trial.

3.      DEFENDANT'S STATEMENTS:

> ANY AND ALL WRITTEN OR RECORDED STATEMENTS MADE BY OR PURPORTED TO HAVE BEEN MADE BY THE DEFENDANT, TOGETHER WITH THE SUBSTANCE OF ANY STATEMENT ATTRIBUTED TO ANY CO-DEFENDANT WHICH THE GOVERNMENT INTENDS TO OFFER IN EVIDENCE AT THE TRIAL IN THE ABOVE ENTITLED AND NUMBERED CAUSE.

Statements of the defendant are discoverable pursuant to the express provisions of Rule 16(a)(1), Fed. R. Crim. P.. Disclosure by the government of the contents of any statement attributable to the defendant is necessary in order for the defendant to adequately prepare for trial and for his counsel to intelligently advise said defendant whether he should testify or invoke his privilege under the Fifth Amendment to the Constitution. *Johnson v. United States*, 344 F.2d 163 (D.C. Cir. 1964); *Poe v. United States*, 233 F. Supp 173 (D.C. Cir. 1964), *aff'd* 352 F.2d 639 (1965); *Inge v. United States*, 356 F.2d 345 (D.C. Cir. 1966). Discovery of statements or confessions of the defendant under Rule 16(a)(1) of the Fed. R. Crim. P. should not only include written or recorded statements made by the defendant to government agencies but to other individuals as well. *United States v. Baker*, 262 F. Supp. 657 (D.C. Cir. 1966), at pp. 671-72; *Davis v. United States*, 413 F.2d 1226 (5th Cir. 1969), at pp. 1230-31; *United States v. Lubomski*, 277 F. Supp. 713 (N.D. Ill. 1967), at pp. 719-22.

Discovery of the defendant's statements under Rule 16(a)(1) should include not only verbatim statements made by the defendant but also any summaries or government reports setting out the substances of the defendant's statements or statements attributable to him. *United States v. Federman*, 41 F.R.D. 339 (S.D.N.Y. 1967); *United States v. Scharf*, 267 F. Supp. 19 (S.D.N.Y.

1967); *United States v. Hasidwa*, 299 F. Supp. 1053 (S.D.N.Y. 1969); *United States v. Jefferson*, 445 F.2d 247 (D.C. Cir. 1971) (including notes of names and dates of interviews with alibi witnesses); *United States v. Curry*, 278 F. Supp. 508 (N.D. Ill. 1967); *United States v. Morrison*, 43 F.R.D. 516 (N.D. Ill. 1967); *United States v. Pilnick*, 267 F. Supp. 791 (N.D. Ill. 1967), at p. 801; *United States v. Reid*, 43 F.R.D. 320 (N.D. Ill. 1967); *United States v. Kageyanna*, 252 F. Supp. 254 (D. Hawaii, 1966), at p. 285; *United States v. Fernberg*, 371 F. Supp. 1205 (N.D. Ill. 1974); *Davis v. United States*, 413 F.2d 107 (2nd Cir. 1969), at pp. 112-14, *cert. denied*, 296 U.S. 961. And the Court, pursuant to Rule 16(e), of the Fed. R. Crim. P., may enter a protective order requiring a partial disclosure of only those portions of the Government reports or summaries, which relate to a summary of a defendant's oral statements. Moore's <u>Federal Practice</u>, Section 16.03 (2); Wright, <u>Federal Practice and Procedure</u>, Section 253, at p. 506; *United States v. Garrett*, 305 F. Supp. 267 (S.D.N.Y. 1969); ABA Standards, <u>Discovery and Procedure Before Trial</u>. Approved 1970, at p. 62.

4. <u>"CATCH-ALL" HEARSAY EXCEPTIONS</u>:

THE SUBSTANCE OF ANY HEARSAY STATEMENTS THE GOVERNEMENT INTENDS TO OFFER UNDER RULES 803(24) OR 804 (b)(5) OF THE FEDERAL RULES OF EVIDENCE.

Defendant intends to object to the proffer of hearsay testimony offered and intends to move to suppress such testimony at a hearing under Rule 104(a) of the Federal Rules of Evidence. Where the Government seeks to offer such hearsay testimony under the catchall "other exceptions" of Rules 803(24) and 804(b)(5) these Rules expressly require notice of same prior to trial.

"A statement may not be admitted under this exception unless the proponent of it makes ADVANCE OF THE TRIAL OR HEARING to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the defendant." (emphasis added)
Rules 803 (24); 804(b)(5), Federal Rules of Evidence.

Therefore, pursuant to the advance notice requirement of such rules, the Government is required to disclose the substance of any statements it intends to offer and defendant hereby makes demand for same.

5.      CO-CONSPIRATOR'S HEARSAY EXCEPTIONS:

THE SUBSTANCE OF ANY AND ALL STATEMENTS WHICH THE GOVERNEMENT ALLEGES ARE ADMISSIBLE AS STATEMENTS OF A CO-CONSPIRATOR MADE DURING THE COURSE AND IN FURTHERANCE OF THE CONSPIRACY. [RULE 801(d)(2)(e), FED. R. EVID.; RULE 16(a)(1)(A), FRD. R. CRIM. PROC.].

Statements of co-conspirators made during the course of the conspiracy and in furtherance of the claims and objectives of that conspiracy may be exceptions to the hearsay rule and admissible pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. The rationale underlying that rule is that co-conspirators within the scope of the conspiracy and in are said to be impliedly authorized by the defendant, a principal, and are therefore admissions by the defendant. Given that such co-conspirator's statements are admissible because they are treated as statements of, or adopted by the defendant, then such statements should be discoverable as the defendant's own pursuant to Rule 16 (a)(1)(A). *United States v. Agnello*, (E.D.N.Y. 1973) 367 F. Supp. 444, at pp. 448-9; *United States v. Turkish*, (S.D.N.Y. 1978) 458 F. Supp. 874, at p. 882 [requiring disclosure of statements where not made by prospective government witness]; *United States v. Fine*, (W.D. Wis. 1976) 413 F. Supp 740, at pp. 742-43; *United States v. Mays*, (E.D. Tex. 1978) 40 F. Supp. 573, at pp. 573-6; *United States v. Bloom*, (E.E. Pa. 1977) 78 F.R.D. 47; U*nited States v. Brighton Building and Maintenance Company*, (N.D. Ill. 1979) 435 F. Supp. 222, *aff'd* (7th Cir. 1979) 598 F.2d 1011; cf. *United States v. Ostrer*, (S.D.N.Y. 1979) 481 F. Supp. 407; *United States v. Hall*, (D.Okla. 1975) 424 429 U.S. 918. Accordingly, defendant requests that this court order

the Government to disclose to undersigned counsel hearsay statements made by defendants ostensible co-conspirators.

6.      DEFENDANT'S PRIOR RECORD:

A COPY OF ANY OF THE DEFENDANT'S PRIOR CRIMINAL RECORD, IF ANY. [RULE 16 (a)(1)(b), FED. R. CRIM. PROC.].

Rule 16 (a)(1)(B), Fed. R. Crim. P, authorizes in mandatory terms the production by the Government of defendant's prior criminal record, if any.

7.      DOCUMENTS AND TANGIBLE OBJECTS:

ANY AND ALL BOOKS, PAPERS, DOCUMENTS OR OTHER TANGIBLE OBJECTS WHICH THE GOVERNMENT MAY INTEND TO USE AS EVIDENCE IN THEIR CASE-IN-CHIEF AT TRIAL OR WHICH ARE OBTAINED FROM OR ALLEGED TO BELONG TO OR WERE MADE OR THE DEFENDANT OR TO ANY CO-CONSPIRATOR, INDICTED OR NOT, OR WHICH THE GOVERNMENT PLANS TO OFFER IN EVIDENCE IN THIS CASE OR WHICH ARE MATERIAL TO THE PREPARATION OF DEFENDANT'S DEFENSE.

Rule 16 (a)(1)(C), Fed. R. Crim. P., authorizes the discovery of all books, papers, documents, and tangible objects in the possession or control of the Government.

The objects requested are discoverable since any such items upon which the Government relied in obtaining an indictment against the defendants are of necessity "material" and required for the preparation of an adequate defense, *United States v. Pilnick*, (S.D.N.Y. 1967) 267 F. Supp 791, at p. 801; *United States v. Wolfsan*, (D. Del. 1968) 294 F. Supp 267, at p. 277; *United States v. Tanner*, (N.D. Ill. 1967) 43 F.R.D. 520, at p. 522; *United States v. Aadel*, (S.D.N.Y. 1967) 280 F. Supp 859, at p. 861; *United States v. Hughes,* (5th Cir. 1969) 413 F.2d 1244, at p. 1254; *United States v. Condor*, (6th Cir. 1970) 423 F.2d 904, at p. 911; and any that are "intended for use by the Government as evidence in chief at the trial" or were "obtained from or [will be alleged to] belong to the defendant" are required to be produced pursuant to the mandatory term of Rule 16(a)(1)(C), Fed. R. Crim. P.

8.    WRITTEN STATEMENTS OF PERSONS NOT CALLED AS WITNESSES:

WRITTEN STATEMENTS OF ALL PERSONS WHO THE GOVERNMENT DOES NOT PLAN TO CALL AS WITNESSES.

The written statements in the possession of the Government of individuals who the Government does not plan to call as witnesses are discoverable under the provisions of Rule 16(a)(1)(C), Fed. R. Crim. Proc., as such statements would not be obtainable at any time under the *Jencks Act* or Rule 16.2, Fed. R. Crim. Proc., since those statutes provide for discovery only of statements of witnesses who actually testified at trial.

Accordingly, pursuant to Rule 16 (a)(1)(C), Fed. R. Crim. Proc., defendant should be granted discovery of the statements of any witnesses whom the Government does not intend to call as witnesses at trial.  *United States v. Hardy*, (D.D.C. 1968) SlipOp, No. CR869-69; *United States v. Gleason*, (S.D.N.Y. 1967) 265 F. Supp. 880, at p. 887; *United States v. Ladd*, (D. Ala. 1969) 48 F.R.D. 266, at p. 267; 8 Moore's Federal Practice, Section 16.05(4); Wright, Recent Changes in the Federal Rules of Procedure, 1966, 42 F.R.D. 552, at p. 569.

Since the language of the exemption in Rule 16(a)(2) is based upon the assumption that statements made to Government agents are discoverable at trial under the Jencks Act or Rule 26.2 Fed. R. Crim. Proc., any "statement" which is not discoverable at trial pursuant to said statute should be discoverable prior to trial under the provisions of Rule 16(a)(2), Fed. R. Crim. P,. *Davis v. United States*, (5th Cir. 1969) 413 F.2d 1226.


9.    REPORTS OR CONCLUSIONS OF SCIENTIFIC TESTS OR ANALYSIS:

ANY AND ALL WRITTEN REPORTS OF ANY SCIENTIFIC ANALYSIS OR CHEMICAL ANALYSIS CONDUCTED BY THE GOVERNMENT OR ANY OF ITS AGENTS OR ANYONE AT ITS DIRECTION.  DEFENDANT FURTHER REQUESTS THAT HE BE PROVIDED WITH THE ACTUAL OBJECT, ITEMS OR SUBSTANCES TESTED IN ORDER TO OBTAIN HIS OWN INDEPENDENT EXPERT ANALYSIS OF SAME.

Discovery of the examinations, tests and experiments requested herein is authorized by Rule 16 (a)(1)(D), Fed. R. Crim. Proc..  While no specific showing of materiality or reasonableness is required under the mandatory provisions of Rule 16 (a), *United States v. Hughes*, (5th Cir. 1969) 413 F.2d 1244, at p. 1250; *United States v. White*, (N.D. Ga. 1970) 40 F.R.D. 70, at p. 72, *aff'd* (5th Cir. 450 F.2d 642, at p. 649; *United States v. Asa*, (7th Cir. 1969) 413 F.2d 244, at p. 246-247, the disclosure of such scientific material is particularly appropriate for the following reasons:

(a)     Any danger of intimidation of witnesses concerning these matters is so slight as to be for all practical purposes nonexistent;

(b)     Expert testimony cannot be effectively subjected to cross-examination or rebuttal without ample opportunity prior to trial to prepare appropriate material for that purpose;

(c)     Expert testimony generally has, in the eyes of a jury, unusually high probative value, coming as it does from a supposedly disinterested party and concerning matters generally beyond the realm of ordinary lay information.

The defense, therefore, may wish to obtain its own expert witness to conduct appropriate tests and give testimony at the trial, Criminal Justice Act of 1964, 18 U.S.C. 3006(A)(e); Fed. R. Crim. P. 28(a), and accordingly, such specimens, experiments, tests and scientific reports and comparisons should be discoverable prior to trial.  *United States v. Dildy*, (D.C. 1966) 39 F.R.D. 340 [prior to new discovery rules], copies of fingerprints and expert analyses of same. *United States v. Kaminsky*, (N.Y. 1967) 275 F. Supp. 365, chemical analysis of narcotics; *United States v. Cobb,* (S.D.N.Y. 1967) 271 F. Supp. 159; *United States v. Killey*, (2d Cir. 1969) 420 F.2d 26.

10.     <u>EXEMPLARS OR TESTS, FINGERPRINT IMPRESSIONS</u>:

ANY AND ALL HANDWRITING OR VOICE EXEMPLARS OR TESTS, FINGERPRINT IMPRESSIONS, OR OTHER MATERIALS OBTAINED BY WHATEVER MEANS OR PROVES WHICH THE GOVERNMENT INTENDS TO OFFER INTO EVIDENCE OR UTILIZE AT THE TRIAL HEREIN, WHETHER SAME WERE THOSE OF DEFENDANT OR WERE THOSE OF SOME OTHER PERSON OR PERSONS KNOWN OR UNKNOWN, AND ANY AND ALL COMPARISONS OR WRITTEN REPORTS OF TESTS, ANALYSIS OR OTHER EXAMINATIONS

CONDUCTED UPON SAME BY THE GOVERNMENT OR ANY OF ITS AGENTS OR ANYONE AT ITS DIRECTION.

11.     TRANSCRIPT OF GRAND JURY TESTIMONY:

THE TRANSCRIPT OF TESTIMONY GIVEN BY ANY PERSON BEFORE THE GRAND JURY IN THIS CAUSE, INCLUDING BUT LIMITED TO, THE PRECISE NATURE OF ANY STATEMENTS ATTRIBUTABLE TO THE DEFENDANT.

The transcript of testimony of individuals who testified before the Grand Jury in this case which is requested herein is discoverable pursuant to Rule 16 (a)(1)(C), Fed. R. Crim. Proc., since such transcripts are "documents" under the rule. *United States v. Hughes*, (5th Cir. 1969) 413 F.2d 1244, at p. 1255-1257, vacated as moot sub nom, *United States v. Gifford-Hill-American*, 90 S.Ct. 817 (1970).

And discovery of recorded testimony of witnesses other than the defendant may be discoverable pursuant to Rule 6 (e), Fed. R. Crim. P., which expressly provides for pretrial discovery of such Grand Jury testimony. *Dennis v. United States*, 384 U.S. (1966).

Therefore, Grand Jury testimony should be disclosed anytime the Government demonstrates no need for secrecy, *Nowlin v. United States*, (5th Cir. 1968) 395 F2d 283, at p. 286, and the defense shows a semblance of need (*e.q.* where, as here, said Grand Jury witnesses are individuals the Government intends to call at trial), *United States v. Machi*, (D.Wis. 1971) 324 F. Supp. 153; *Allan v. United States*, (D.C. Cir. 1968) 390 F.2d 482; *Gibson v. United States*, (D.C. Cir. 1968) 403 F.2d 166, at p. 169; *United States v. Tanner*, (N.D. 1967) 279 F. Supp. 457, at p. 472.

And where, as here, the Government's case may depend on oral, unrecorded statements of the alleged co-conspirators, then any of the Grand Jury testimony regarding the substance of those statements is necessary to adequately prepare a and disclosure should be required prior to trial. "Where the question of guilt or innocence may turn on exactly what was said, the defense is

clearly entitled to all relevant aid which is reasonably available to ascertain the precise substance of the statements." *Dennis v. United States*, 384 U.S. 855, 872-873. (1966)

## XVIII.   MOTION FOR AGENTS TO
## RETAIN THEIR ROUGH NOTES

The defendant, ANTHONY COLOMBO, by and through his attorneys, moves this Court to enter an Order requiring all Government law enforcement officers and agents, and the government attorneys, who were involved in the investigation charged in the above-listed case, to retain and preserve all rough notes and writings that are producible, under Fed. R. Crim. P., 26(F)(1)(2), and *Brady v. Maryland*, 373 U.S. 83 (1963) or which may be relevant to impeachment purposes under Fed. R. Evid. Rule 806.

The second circuit has held such "Rough Notes" producible.  <u>See</u> *United States v. Scotti*, 47 F.3d 1237, (2d Cir. 1995).  <u>See</u> <u>also</u>, *Palermo v. United States*, 360 U.S. 343, 351-53 and *United States v. Aviles*, 337 F.2d 552, 556 (2d Cir. 1964), *cert. denied*, 380 U.S. 906.

The purpose of this motion is to alert the Government to the fact that such records may be relevant in this case.

It is evident from the nature of the indictment that much of the Government's evidence and cross-examination will rely on out-of-court declarations.  In this context, it would be bad faith for the agents or investigators to destroy their notes.

The evidence will show that agent-witnesses in this case usually make notes describing an event as soon as reasonably possible.  Days later, after conferencing with fellow officers and agents, formal reports are dictated, then transcribed.  After all that, the formal reports are read and approved.  Their notes are preserved, pursuant to agency regulation, policy, or habit.  These notes are made and adopted as statements in connection with preparation of reports.  This motion is authorized by the Fifth and Sixth Amendments to the United States Constitution, and permits an

exercise of rights as recognized by Fed. R. Crim. P., Rule 26 (f)(1)(2).  See *United States v. Scotti*, 47 F.3d 1237, (2d Cir. 1995).

## XIX.  MOTION TO REQUIRE THAT THE GOVERNMENT DESIGNATE DOCUMENTS TO BE INTRODUCED AT TRIAL

The defendant, ANTHONY COLOMBO, by and through his attorneys, and pursuant to Rule 16, Federal Rules of Criminal Evidence, hereby requests the Government make available to defendant a list of documents that the Government intends to introduce at trial.  Defendant would show as follows:

Defendant cites the following benefits that would accrue if such a list were made available: (1) the defendant would continue the discovery process in a more deliberate and orderly manner; (2) the defendant would be prepared to rebut or explain those documents introduced at trial; (3) the trial would proceed without lengthy recesses that would be necessary when the defense needed to locate any related writings, or the remainder of writings, that ought to be contemporaneously introduced with the government's documents; and (4) the defendant's case would be condensed because it would be possible to concentrate on the designated documents.

The defendant alleges that by presenting a list of the documents the government intends to introduce at trial, the government will not be unduly burdened.

Rule 16, Federal Rules of Criminal Procedure, was adopted to allow discovery of documents and other materials, otherwise beyond the reach of the defendant, which might be numerous and difficult to identify.  *Bowman Dairy Company v. United States*, 341 U.S. 214 (1951).  The Rule requires more than a perfunctory invitation by the Government to look at the contents of the government's file.  *United States v. Pascual*, 606 F.2d 561,565 (5th Cir. 1979). Further, if the documents in the possession of the Government are voluminous, the defendant need

not lay a detailed foundation of materiality for each item. *United States v. Hughes*, 413 F.2d 1244, 1254, (5th Cir. 1969); *United States v. Fancher*, 195 F. Supp. 448, 449, 450 (D.Conn. 1961).

In *United States v. Greater Blouse, Skirt & Neckwear Contractors' Association, Inc.*, nine defendants were charged with conspiring to violate the Sherman Antitrust Act. 177 F. Supp. 213 (S.D.N.Y. 1959). The Court ruled that although the defendants made no specific showing of materiality or reasonableness, such a showing was not required in order to discover the requested documents in advance of trial because they were too numerous to identify. The Court found the Government's offer "to produce all documents which it may use in the trial of this case," insufficient. The Government's offer overlooked the fact that Rule 16 grants production and inspection of documents not merely to help a defendant understand the prosecutor's case, but to help the defendant in the preparation of his defense. 177 F. Supp. 213, 224.

Similarly, in the case at bar, it is not in the spirit of Rule 16 to allow the Government to secrete relevant and material evidence in a room full of documents. Thus, in *United States v. Pascual*, it was held to be reversible error to introduce a letter that could not be found by defendant's attorney when he was allowed to review the Government's file. 606 F.2d 561 (5th Cir. 1979). It seems a slight distinction whether the evidence has been removed from the file or buried so that it cannot be retrieved. For that reason an order requiring the government to designate the documents and records it would use at trial has been approved by the Fifth Circuit Court of Appeals in a case where there were numerous documents in the government's possession. *United States v. Beardern*, 423 F.2d 805 (5th Cir. 1970).

## XX. MOTION TO INCORPORATE AND
## ADOPT MOTIONS OF CO-DEFENDANTS
## <u>And LEAVE TO MAKE FURTHER MOTIONS</u>

The defendant, ANTHONY COLOMBO, by and through his attorneys, and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, respectfully moves this Court for permission to incorporate and adopt each and every motion filed by all co-defendants in this case. This motion is intended to include all motions filed during the pendency of this case. The defendant reserves the right to object to any motion not intended to be adopted or incorporated by this motion.

The defense has endeavored to encompass within this Omnibus Motion all forms of pre-trial relief that may properly be requested at this time. Should this case assume a different posture at a later date due perhaps to availability or unavailability of evidence, the Court is respectfully asked to grant leave to make such further motions as may seem appropriate at a future date.

## <u>CONCLUSION</u>

WHEREFORE, your Affirmants respectfully pray that Orders issue granting to Defendant ANTHONY COLOMBO, the relief sought within all instant motions; together with such other and further relief as to this Court seems just and proper.

Dated: August 24, 2005
      New York, NY

                Respectfully Submitted,

                _____

                FASULO, SHALLEY & DiMAGGIO, LLP
                Attorneys for ANTHONY COLOMBO
                By: Louis V. Fasulo, Esq. (LF4175)
                Aaron M. Goldsmith, Esq. (AG4773)
                225 Broadway, Suite 715
                New York, NY 10007
                (212) 566-6212

TO:       ***Electronically***
          UNITED STATES DISTRICT COURT, SDNY
          Clerk of the Court
          500 Pearl Street
          New York, NY  10007

          ***Via Hand Delivery***
          UNITED STATES ATTORNEY'S OFFICE, SDNY
          Attn.: Benjamin Lawsky, AUSA
          1 St. Andrews Plaza
          New York, NY 10007

          ***ALL COUNSEL***

## **CERTIFICATION OF SERVICE**

AARON M. GOLDSMITH, an attorney duly admitted to practice law before the Courts of the United States, Southern District of New York, affirms the following under penalty of perjury:

That I am associated with Fasulo, Shalley & DiMaggio, attorneys for Defendant ANTHONY COLOMBO in the above-entitled action; that I am not a party to this action; and that on the 24th day of August, 2005, I served the annexed OMNIBUS MOTION, by HAND, to the following:

> U.S. ATTORNEYS' OFFICE, SDNY
> Attn.: Benjamin Lawsky, AUSA
> One St. Andrews Plaza
> New York, NY  10007

AND that I further served the annexed OMNIBUS MOTION, electronically, to all defense counsel.

This being the address of record within the State of New York, listed for service of the parties to the within action.


Dated:         New York, NY
               August 24, 2005


                                        _____
                                        Aaron M. Goldsmith, Esq.