SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
-------------------------------------------------------------------X
                    In the Matter

                         -of-

The Interception of Certain Telephonic and Electronic
Communications Occurring Over the Telephone Line and  **AFFIDAVIT IN**
Instrument Currently Assigned Telephone Number  **SUPPORT OF AN**
(212) 410-7444, listed in the name of Theresa  **APPLICATION FOR**
Ferrara and located at 420 East 115th Street, 3rd floor,  **AN EAVESDROPPING**
apartment 3, County of New York, State of New York.  **WARRANT**
-------------------------------------------------------------------X

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF WESTCHESTER  )

       MERYL A. LUTSKY, being duly sworn deposes and says:

       1.       I am an Assistant Deputy Attorney General with the New York State Organized Crime Task Force (hereinafter "OCTF"), the principal function of which is to investigate and prosecute cases involving multi-county and multi-state organized criminal activity.

       2.       This affidavit is submitted in support of the Application of George B. Quinlan, Deputy Attorney General-In-Charge of OCTF, for the issuance of the above-captioned eavesdropping warrant.

## BACKGROUND OF THE INVESTIGATION

       3.       An ongoing investigation, being conducted by OCTF and the New York State Police ("NYSP") has revealed probable cause to believe that Christopher Colombo,

Anthony Colombo, Philip Dioguardi, John Ferrara, their agents, co-conspirators and others as yet unknown, are engaged in illegal bookmaking.

4. Based upon the facts developed during this investigation, on May 1, 2000, the Honorable Daniel W. Joy, Justice of the Supreme Court of the State of New York, Appellate Division, Second Department, issued an Order for Pen Registers and Trap and Trace Devices authorizing the installation and use of pen registers and trap and trace devices (Caller I.D.) on the telephone lines and instruments assigned the following telephone numbers: (914) 443-8182, bearing electronic serial number 17904462477, subscribed in the name of Anthony Colombo and billed in the name of Philip Dioguardi, 2 East Main Street, Number 4, Town of Middletown, County of Orange, State of New York; (914) 496-6506, subscribed in the name of Lucille Colombo and located at 51 Horton Road, Town of Washingtonville, County of Orange, State of New York; (914) 496-8201, subscribed in the name of Anthony Colombo and located at 25 Horton Road, Town of Blooming Grove, County of Orange, State of New York; (914) 343-3313, subscribed in the name of Philip Dioguardi and located at 2 East Main Street, Town of Middletown, County of Orange, State of New York; and (917) 560-0397, bearing electronic serial number 316010009486930, subscribed in the name of Jeffrey Rosen, 1444 11th Street, Fort Lee, New Jersey.

5. Furthermore, on June 15, 2000, the Honorable Eugene Nardelli, Justice of the Supreme Court of the State of New York, Appellate Division, First Department, issued an Order for a Pen Register and Trap and Trace Device authorizing

the installation and use of a pen register and trap and trace device (Caller I.D.) on the telephone line and instrument assigned telephone number (212) 410-7444, subscribed in the name of Theresa Ferrara and located at 420 East 115th Street, 3rd floor, apartment 3, County of New York, State of New York.

6. On June 29, 2000, the Honorable Sondra Miller, Justice of the Supreme Court of the State of New York, Appellate Division, Second Department, issued an Order Extending the use of Pen Registers and Trap and Trace Devices on the telephone lines and instruments assigned the following telephone numbers: (914) 443-8182, bearing electronic serial number 17904462477, subscribed in the name of Anthony Colombo and billed in the name of Philip Dioguardi, 2 East Main Street, Number 4, Town of Middletown, County of Orange, State of New York; (914) 496-6506, subscribed in the name of Lucille Colombo and located at 51 Horton Road, Town of Washingtonville, County of Orange, State of New York; (914) 496-8201, subscribed in the name of Anthony Colombo and located at 25 Horton Road, Town of Blooming Grove, County of Orange, State of New York; and (914) 343-3313, subscribed in the name of Philip Dioguardi and located at 2 East Main Street, Town of Middletown, County of Orange, State of New York.

7. For the purpose of the instant Application, I incorporate herein by reference the May 1, 2000 Order for Pen Registers and Trap and Trace Devices, the January 7, 1999 Extended Order for Pen Registers and Trap and Trace Devices and all affidavits submitted in support of their issuance as if they were fully set forth at length below.

8. Based upon the facts developed during the course of this investigation, as set forth in the Affidavit of Investigator Joseph McCabe of the NYSP, which I have read and which is incorporated in and made a part of this affidavit, there is probable cause to believe that Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara and others as yet unknown, have engaged in, and continue to engage in Promoting Gambling in the First and Second Degrees, Possession of Gambling Records in the First and Second Degrees and Conspiracy to commit those crimes in violation of Articles 225 and 105 of the Penal Law of the State of New York.

9. There is also probable cause to believe, based upon the facts set forth in the incorporated Affidavit of Investigator McCabe, that essential evidence concerning these crimes will be obtained through the eavesdropping we seek to conduct, thereby enabling OCTF and the NYSP to achieve the investigative objectives set forth below. Specifically, there is probable cause to believe that Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara, their agents, co-conspirators and others as yet unknown, have used, are using and will continue to use the telephone lines and instruments currently assigned the following telephone numbers: (914) 443-8182, bearing electronic serial number 17904462477, subscribed in the name of Anthony Colombo and billed in the name of Philip Dioguardi, 2 East Main Street, Number 4, Town of Middletown, County of Orange, State of New York; (914) 496-6506, subscribed in the name of Lucille Colombo and located at 51 Horton Road, Town of Washingtonville, County of Orange, State of New York; (914) 496-8201, subscribed in the name of Anthony Colombo and

4

located at 25 Horton Road, Town of Blooming Grove, County of Orange, State of New York; (914) 343-3313, subscribed in the name of Philip Dioguardi and located at 2 East Main Street, Town of Middletown, County of Orange, State of New York; and (212) 410-7444, subscribed in the name of Theresa Ferrara and located at 420 East 115th Street, 3rd floor, apartment 3, County of New York, State of New York, to discuss and engage in a sports bookmaking operation which includes the crimes of Promoting Gambling in the First and Second Degrees, Criminal Possession of Gambling Records in the First and Second Degrees and Conspiracy to commit those crimes in violation of Articles 225 and 105 of the Penal Law of the State of New York.

## OBJECTIVES OF THE INVESTIGATION

10. The objectives of the instant investigation include the following: (a) to identify individuals who are placing, accepting and "laying off" bets; (b) to identify the superiors, subordinates and associates of this gambling operation; (c) to determine the existence and location of gambling records reflecting and identifying witnesses to, and participating in, these crimes, who would be in a position to give evidence against Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara, their associates concerning their criminal activities; (d) to determine the manner in which the collection, storage, transfer and disbursement of money and other proceeds of bookmaking is accomplished; and (e) to obtain evidence necessary to prosecute successfully all participants involved in this bookmaking operation.

11. The objectives set forth can only be achieved through the use of court-ordered electronic surveillance. As is demonstrated in the McCabe Affidavit, conventional investigative means, including physical surveillance and the use of pen registers, trap and trace devices, telephone toll analysis and an informant have been pursued and have produced limited evidence of this illegal operation. Those techniques alone are not sufficient to accomplish all of the aims of this investigation. In addition, other conventional means are not likely to succeed if tried. Specifically, conventional means of investigation have been employed but have not succeeded in providing necessary evidence relating to the full scope of the bookmaking operation. Nor have these conventional means of investigation enabled the police officers to identify all of the members of this conspiracy. In addition, conventional means of investigation have not succeeded in amassing evidence sufficient to prosecute successfully Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara, and their associates for all the crimes they are committing. Although our investigation has been aided by the use of a confidential informant (hereinafter "CI"), the CI's assistance alone will not enable us to achieve all of the objectives of our investigation. While the CI is, as set forth in Investigator McCabe's Affidavit, in a position to speak with Paul Seipman, the CI is not in a position to speak over any of the subject telephone lines and instruments. Further, I am informed by Investigator McCabe that because the CI is only a bettor and does not play a substantial role in the gambling operation, the CI has never been, is not, and will never be in contact with the targets of this investigation. Therefore, the CI is unable to introduce an undercover police

6

officer to the targets of this investigation or their associates. Moreover, because the CI does not have any contact with the targets of the investigation, the CI is also unable to testify against the targets or their associates. Moreover, Investigator McCabe has also informed me that the NYSP has promised the CI to protect the CI's identity and that it is the intention of the NYSP and other law enforcement agencies to continue to use the CI in this and possibly other gambling-related investigations. In these circumstances, it is evident that the CI's information, while relevant to establishing probable cause, is not available to use in a prosecution against the targets of this investigation and their associates. Thus, other than supplying information about the illegal bookmaking operation, the CI's ability to fully achieve the aforementioned objectives is limited.

12. A grand jury investigation of this criminal activity would not likely succeed in achieving all of the objectives of this investigation at this time. We currently do not know the identity of many of those witnesses who would be in a position to give critical evidence concerning this illegal gambling operation (e.g., other employees/wirerooms), nor do we know the identity of all the other bookmakers used by these individuals to "lay off" their betting action, or the locations of the wirerooms where those other bookmakers accept bets and store the records of their activity. I am advised by Investigator McCabe that, in his experience, it is common for bookmakers to "lay off" or "hedge" their bets with others involved in sports bookmaking. In addition, many of those potential witnesses who have been identified, and those other witnesses who likely have knowledge of Christopher Colombo's, Anthony Colombo's, Philip Dioguardi's and John Ferrara's illegal activities are

7

themselves subject to prosecution, and would thus probably refuse to waive immunity if called to testify in such an inquiry. And, of course, once immunized in a state grand jury proceeding they could no longer be prosecuted in connection with the inquiry. Moreover, even if certain individuals were willing to waive immunity, or if the matter were presented to a federal grand jury and the witnesses were not afforded the "immunity bath" provided by New York State law, at this point in the investigation we do not know enough about the extent and methodology of the criminal activity to determine whether witnesses are testifying truthfully. Thus, in the event that the witnesses lied to the grand jury, it is doubtful that we would have sufficient evidence to pursue a prosecution for perjury. Moreover, we do not now know the identity of all those individuals who place bets with the subject bookmaking operation and we are thus not in a position to seek their testimony. Finally, as noted above, the confidential informant who has aided us in this investigation is unable to testify against the targets of this investigation and their associates, as it is evident that the CI does not possess, in any event, information concerning the full scope of this illegal bookmaking operation.

13. In addition, any attempt to persuade the subjects of the investigation to cooperate would also not likely further the investigation. Most likely, they would insist on immunity as a condition of their cooperation. At this time, we are unwilling to extend an offer of immunity to the subjects of this investigation or to otherwise seek their cooperation. Our unwillingness to seek cooperation from the subjects of the investigation is also based upon the belief that, even if they were given immunity, it is very unlikely that the subjects

would provide truthful testimony about their conspiracy. Moreover, once a subject of the investigation is approached for cooperation, it is likely he will alert the other subjects to the fact of the investigation's existence. If that occurs, it is certain that the subjects will change how they conduct their illegal activity and will become more secretive about that activity in an effort to evade detection by investigators.

14. Physical surveillance has been utilized in this investigation, and it is unlikely that continued physical surveillance, alone, will be able to achieve the objectives of our investigation. As set forth in Investigator McCabe's annexed affidavit, physical surveillance of the residences of the targets of this investigation is of very limited use since the bookmaking activity is not occurring inside those locations but in private locations elsewhere in the State of New York. Moreover, as Investigator McCabe's affidavit sets forth, attempts by the team to follow Dioguardi have resulted in having to call off the surveillance almost every time due to Dioguardi's driving habits. He continually drives at twenty miles per hour, even on the highway. He consistently makes U-turns and stops in the middle of streets, sometimes sitting still for thirty minutes straight. Furthermore, as set forth in Investigator McCabe's annexed affidavit, it is impossible for police officers either to observe or overhear conversations at the target residences or telephonic conversations of the targets of this investigation with their co-conspirators over the above-captioned telephones. Obviously, we cannot conduct physical surveillance inside the private homes of the targets of this investigation nor inside the wirerooms used by this gambling operation, nor are we able through conventional means to have police officers or

confidential informants physically position themselves so as to overhear what the targets and their associates say to each other. Thus, we cannot obtain the critical evidence of the conversations engaged in by Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara and their accomplices which the facts demonstrate are likely occurring over the above-captioned telephone lines and instruments.

15. Analysis of telephone toll records and pen register data would be similarly insufficient to achieve the goals of this investigation. Besides establishing incriminating calling patterns involving the subjects of our investigation, toll analysis and pen register information cannot provide evidence sufficient to convict the subjects or sufficient to identify the other individuals or bookmakers involved in these activities, or to identify the individuals using the telephones called by our targets. Such information can only be obtained by electronic surveillance. Like physical surveillance, toll analysis and the use of pen registers neither reveal the matters discussed nor identify the participants in the criminal conspiracy.

16. At this time, I am not aware of any undercover law enforcement officers who can approach Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara or their associates in an attempt to satisfy the goals of this investigation.

17. Based on the information set forth in Investigator McCabe's Affidavit, probable cause exists to search the location of 145 Clinton Street, Montgomery, County of Orange, State of New York, and possibly other locations, without resorting to electronic surveillance. However, the execution of such search warrants, at this time, would not likely

accomplish the objectives of this investigation; to the contrary, the premature execution of such search warrants would likely frustrate rather than promote attainment of the objectives of this investigation. At present we do not know the full extent of this gambling operation, nor do we know of all of the locations used by the targets of this investigation and their criminal associates to conduct this illegal business. In these circumstances, the mere execution of a search warrant, even if it resulted in the seizure of gambling records, would likely leave many co-conspirators, including "hedge room" associates and the others involved in this bookmaking operation, untouched. Similarly, the execution of search warrants at locations closely connected to Christopher Colombo, Anthony Colombo, Philip Dioguardi and John Ferrara would jeopardize the investigation by prematurely exposing its existence before all conspirators have been identified and the scope of the conspiracy ascertained. It is, however, part of our investigative plan to execute search warrants at wirerooms and other locations identified through eavesdropping when the execution of those warrants will not undermine this continuing covert investigation. Moreover, the execution of search warrants in the future, coupled with the expected intercepted conversations, will allow us to properly and completely affix criminal responsibility for contraband seized. Similarly, the premature arrest of the targets of this investigation would likely mean that many of their criminal associates, including those who supervise their activities, would escape untouched.

18. The factors detailed above, coupled with the absence of witnesses who can be relied upon to testify truthfully to the crimes in question, render the use of

11

electronic surveillance imperative if this investigation is to succeed. Due to the manner in which these crimes are carried out, the interception of conversations and electronic communications of the subjects of this investigation relating to the crimes set forth herein is the only available method of investigation which has a reasonable likelihood of securing the evidence necessary to expose and successfully prosecute all of the conspirators.

19. Based on the foregoing and on the facts contained in the annexed affidavit of Investigator McCabe, I believe that the crimes referred to in paragraph 8 above, are being engaged in by Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara, their agents, co-conspirators and others as yet unknown, and that evidence essential to a successful prosecution can be obtained only by the court-authorized electronic eavesdropping described in this affidavit.

20. I have been informed by Timothy Connolly, Supervisor of Security and Surveillance Records for the Organized Crime Task Force, that he maintains an Electronic Surveillance Index reflecting those persons, telephone numbers and premises that have previously been the subject of eavesdropping conducted by OCTF. That index indicates that the persons, telephone lines and instruments and premises in the instant application, unless otherwise noted above, have not otherwise previously been the subject of such eavesdropping.

## SCOPE AND EXECUTION OF THE REQUESTED WARRANT

21. It is requested that this Warrant be specifically limited to the following: the telephonic and electronic communications (digital pager messages) of Christopher

Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara, their agents, co-conspirators and others as yet unknown occurring over the telephone line and instrument currently assigned telephone number (212) 410-7444, listed in the name of Theresa Ferrara and located at 420 East 115th Street, 3rd floor, apartment 3, County of New York, State of New York,[1] as those communications relate to the crimes of Promoting Gambling in the First and Second Degrees, Possession of Gambling Records in the First and Second Degrees and Conspiracy to commit these crimes, including conversations relating to: (a) information affecting, or likely to affect, the outcome of sporting contests, information concerning the odds established for wagers and the circumstances which result in those odds, including the betting "line;" (b) discussions relating to the placing, accepting and "laying-off" of bets on sporting events; (c) conversations between superiors, subordinates or associates regarding the functioning of the gambling organization, including conversations relating to the amount and payment of commissions and other profits from the promoting of gambling

---

[1] The telephone lines and instruments of subjects Christopher Colombo [(914) 496-6506, subscribed in the name of Lucille Colombo and located at 51 Horton Road, Village of Washingtonville, Town of Blooming Grove, County of Orange, State of New York], Anthony Colombo [(914) 496-8201, subscribed in the name of Anthony Colombo and located at 25 Horton Road, Town of Blooming Grove, County of Orange, State of New York], and Philip Dioguardi [(914) 443-8182, bearing electronic serial number 17904462477, subscribed in the name of Anthony Colombo and billed in the name of Philip Dioguardi, 2 East Main Street, Number 4, Town of Middletown, County of Orange, State of New York; and (914) 343-3313, subscribed in the name of Philip Dioguardi and located at 2 East Main Street, Town of Middletown, County of Orange, State of New York], are located within the jurisdiction of the Supreme Court of the State of New York, Appellate Division, Second Department. An application for an eavesdropping warrant on these telephone lines and instruments is also being submitted to the Second Department on this date.

13

described above, but in no event shall authorization exceed 11:59 p.m., on Thursday, September 7, 2000. For the reasons set forth above, it is my opinion that evidence sufficient to successfully prosecute the appropriate persons committing the crimes referred to above, can only be obtained by the interception of several communications. In particular, although there is evidence of regular telephone contact, many of the participants in this organization may not have daily contact with one another. For example, I know from my experience in other investigations of illegal bookmaking, that in many instances, a "runner" need only contact the head of the organization or the wireroom once a week in order to get his "figure" and to arrange the "settle up." Many times, a wireroom employee will speak with an individual in a supervisory position only when problems arise, such as the collection of money owed by a delinquent bettor, or to discuss business relationships with other bookmaking operations. Given this context, it is evident that our objectives will only be met by the interception of multiple conversations. In no event, however, should said interception be authorized for more than thirty days from its effective date.

26. If the Eavesdropping Warrant is issued, I request the Court to direct the submission of bi-weekly progress reports showing what progress has been made toward the achievement of the authorized objectives of this Warrant and the need for continued eavesdropping. I also ask the Court to allow such reports to take the form of the logs ("plant reports") maintained by the law enforcement officers conducting the eavesdropping.

15

27. Unless noted above, no previous application for the same, or similar, relief has been made.

### CONCLUSION

WHEREFORE, I respectfully request that the Application of George B. Quinlan, Deputy Attorney General-In-Charge of OCTF, be granted and an Eavesdropping Warrant be issued in the form annexed.

*MERYL A. LUTSKY*
Assistant Deputy Attorney General

Sworn to before me this
8th day of August, 2000

*Notary Public*

MARY A. MILLS
Notary Public, State of New York
No. 4755324
Qualified in Putnam County
Commission Expires September 30, 2000