TO: LAW ENFORCEMENT OFFICERS ASSIGNED TO "HARVEST" EAVESDROPPING WARRANT

FROM: MERYL A. LUTSKY
ASSISTANT DEPUTY ATTORNEY GENERAL
ORGANIZED CRIME TASK FORCE

DATE: OCTOBER 6, 2000

SUBJECT: **MINIMIZATION INSTRUCTIONS FOR AMENDED AND EXTENDED "HARVEST" EAVESDROPPING WARRANT DATED OCTOBER 5, 2000**

*********************************************************************************

### 1. MONITORING AND RECORDING

The law makes no distinction between "LISTENING TO," "MONITORING," or "RECORDING," a conversation. Courts generally regard an eavesdropping warrant like any other search warrant: It authorizes a limited "search" and a limited "seizure" of evidence. Whether a conversation is merely overheard, or also recorded, makes no difference - legally: it has been seized.

If you seize everything that comes over the eavesdropping devices, the fruits of our investigation are likely to be suppressed. We have to establish that we neither LISTENED TO, NOR RECORDED, conversations we had no right to overhear.

1

THEREFORE, everything which is listened to <u>must</u> be recorded. There should be no monitoring without the tape recorder in operation. Monitoring without recording is prohibited by Criminal Procedure Law Section 700.35 and will result in suppression of the eavesdropping evidence.

On the other hand, proper minimization techniques <u>can not</u> be implemented if the eavesdropping equipment is left on "automatic" and no one is monitoring communications occurring over the eavesdropping devices. This will also result in suppression of the eavesdropping evidence.

THEREFORE - **DO NOT LISTEN WITHOUT RECORDING AND DO NOT RECORD WITHOUT LISTENING**.

## CONVERSATIONS WHICH MAY BE MONITORED AND RECORDED

As of October 5, 2000, we have the authority, pursuant to the eavesdropping warrant, to intercept the telephonic and electronic communications of the subjects named below occurring over the telephone lines and instruments currently assigned telephone numbers: (914) 443-8182, bearing electronic serial number 17904462447; (914) 496-6506; (914) 343-3313; (212) 410-7444; (917) 723-3915; (914) 755-2725, with International Mobile Equipment Identification Number 000501938108100;

(212) 876-3651; and the digital display paging device, and its associated voice mail box, currently assigned telephone number (917) 998-3976. In particular, we may listen to the telephonic and electronic communications of Christopher Colombo, Anthony Colombo, Philip Dioguardi, John Ferrara, Anthony DeFranco, Eddie Robinson, Bobby LNU, Patty LNU, Frankie LNU, Anthony "Ants" Sedia, their accomplices, co-conspirators, agents or others as yet unknown, over the above-mentioned instruments, as these communications relate to the crimes of Promoting Gambling in the First and Second Degrees, Possession of Gambling Records in the First and Second Degrees, and Conspiracy to commit those crimes; in violation of Articles 225 and 105 of the Penal Law of the State of New York.

You are hereby instructed further, that the communications of the above-named individuals are to be intercepted only with regard to the above-named crimes for which they have been identified as subjects. For example, if any conversation of the above-named subjects is overheard relating to any criminal activity other than the ones specified above for which they have been listed as subjects, notify me immediately. Since these conversations are not within the scope of the warrant, consideration must be given to amending the warrant.

## NAMED SUBJECTS AND OTHER INDIVIDUALS

The purpose and objectives of this eavesdropping warrant are to identify individuals who are conspiring or acting in concert with the above named individuals with respect to the above-listed offenses. Hence, conversations and communications between the above-named parties and other individuals relating to the designated offenses are within the scope of the warrant and may be intercepted and recorded.

## UNNAMED OTHERS

We **only** have authority to intercept the telephonic and electronic communications of the above-named subjects, their accomplices, agents, co-conspirators, and others as yet unknown, as these communications relate to the crimes stated above. It is, however, permissible to monitor and record a conversation which does not involve any named subjects for a brief period of time (thirty to ninety seconds) in order to determine the identity of the parties to the conversation and determine whether the conversation relates to the crimes under investigation. If the conversation involving unknowns does relate to a crime under investigation, continue listening and recording. If the conversation does not relate to the crimes under investigation, then, within the first thirty seconds to two minutes, you must stop monitoring and recording. Thereafter, you may do

no more then "spot monitor" the conversation to determine if a named subject enters the conversation or if the conversation has turned from unrelated topics to the crimes under investigation. I will discuss spot monitoring later in this briefing. Since it is possible that, at some time after this initial non-pertinent portion of the conversation, the conversation may turn from innocent unrelated topics to the crimes under investigation, we have the right to spot monitor apparently innocent conversations to guard against such a possibility (especially since the members of the conspiracy may deliberately try to delay and disguise discussion of criminal acts to frustrate the use of eavesdropping).

If, during the course of initially monitoring and/or spot monitoring a conversation which does not involve a named subject, a crime is discussed which is not one designated in the warrant, <u>notify me immediately</u>. If this situation arises, consideration has to be immediately given to amending the warrant.

## NEW CRIMES

If, during the course of eavesdropping, a conversation relating to a crime not specified in the warrant is inadvertently overheard, <u>notify me immediately</u>. This conversation is not within the scope of the warrant and consideration must immediately be given to amending the warrant.

## USE OF CODED LANGUAGE

It is entirely possible that the parties to the communications or conversations may use coded, guarded, or cryptic language when referring to the criminal enterprise. If you suspect that this is being done, continue to monitor the conversation until you can determine whether it is pertinent or non-pertinent. It may later turn out that what was perceived as coded language relating to a designated offense was actually a totally innocent conversation.

It is our opinion that the courts will not suppress pertinent conversations simply because some non-privileged and non-pertinent conversations were intercepted. Always remember, however, that eventually a court may have to decide whether the warrant was properly executed. The standard which a court is likely to apply in determining whether there was a failure to minimize non-pertinent conversations is simple - DID THE OFFICERS MAKE A GOOD FAITH EFFORT TO COMPLY WITH THE RESTRICTIONS AND REQUIREMENTS OF THE EAVESDROPPING WARRANT.

Keep in mind that each of you may be required to explain, from the witness stand, why a particular conversation was intercepted.

Make a good-faith effort to comply with the central purpose of the eavesdropping warrant, to intercept and record telephonic and electronic communications and conversations involving the named subjects pertaining to the offenses designated in the warrant. Use common sense and your police expertise to make this effort.

If it is determined that what was perceived as coded language relating to offenses designated in the warrant actually related to some other offense, <u>notify me immediately</u>. If this situation arises, consideration has to be immediately given to amending the warrant.

## 2. <u>SPOT MONITORING</u>

Assuming a conversation does not, during the initial thirty to ninety seconds, fall within the categories specified in the warrant, the recording and listening devices must be turned off.

It is however possible that some time after this initial period, the conversation by turn to a discussion of the designated offenses.

Therefore, periodically turn the recorder and the monitoring device back on and listen and record for a few seconds. If, during this brief period, evidence regarding the above-named subjects and the aforementioned crimes is intercepted, keep listening and recording. If no

such evidence is intercepted, TURN THE MACHINES OFF AND STOP LISTENING.

Continue to "spot-monitor" as the circumstances indicate.

There are three possible exceptions to this rule; "Patterns of Innocence," "Patterns of Involvement," and "Exigent Circumstances."

### PATTERNS OF INNOCENCE

If, after several days or weeks of eavesdropping, we have learned that conversations between one of our subjects and a particular individual or individuals are invariably innocent, non-crime related matters, a "Pattern of Innocence" exists, and such conversations should not be recorded, listened to, or even "spot-monitored" unless exigent circumstances exist.

### PATTERNS OF INVOLVEMENT

If, during the course of the eavesdropping, one or more individuals are identified (by name, nickname, voice, etc.) as co-conspirators, accomplices, or agents of our subjects in the above-named crimes, and there is no applicable privilege involved, the "spot-monitoring" requirement may be relaxed somewhat as to conversations and communications between one or more of our subjects and those individuals.

EXIGENT CIRCUMSTANCES

Under special circumstances, it may be necessary to record and listen to conversations which normally would not be intercepted. If you anticipate such circumstances, consult me in advance.

### 3. ELECTRONIC COMMUNICATIONS WHICH MAY BE INTERCEPTED

We also have the authority to intercept electronic communications as listed in the eavesdropping warrant. Because of the manner in which such electronic communications are transmitted and received, all such electronic transmissions intercepted over the above-mentioned instruments will be recorded and examined by monitoring agents and attorneys to determine their relevance to the investigation described herein. The disclosure of the contents or nature of these electronic communications will be limited to those communications relevant to the investigation described herein.

### 4. PRIVILEGED COMMUNICATIONS:

We may not listen to any communication which would fall under any legal privilege.

The general categories of privileged communications are as follows; attorney/client, clergyman/parishioner, doctor/patient, and

husband/wife. We are explicitly prohibited from intercepting such conversations by the terms of the warrant.

## ATTORNEY/CLIENT

Consider this an absolute rule: NEVER knowingly listen to or record a conversation between a client and his attorney. If, at any time during this investigation, we learn the name of any attorneys retained by our subjects, these names must be posted in a conspicuous place in the plant. The eavesdropping devices <u>must</u> be turned off as soon as it is ascertained that the attorney and a client are communicating. However, please note the following exception to the attorney-client privilege.

### Payment of Legal Fees by Third Party

The payment of legal fees by a third person does not create an attorney/client relationship between the attorney and his client's benefactor. (<u>U.S. v. Pape</u>, 144 F.2d 778 (2d Cir. Ct. of App.); <u>Ex Rel Priest v. Hennessy</u>, 51 N.Y.2d 69 [1980]). Although often intended to be confidential, it is not undertaken for the purpose of obtaining legal advice for the third party and, therefore, no attorney/client relationship arises between the third party paying the legal fees and the attorney. Since no attorney/client privilege arises unless an attorney/client relationship exists, and under these circumstances no attorney/client relationship exists, no privilege exists.

However, some privilege <u>may</u> exist where the attorney and third party are discussing strategy or tactical issues regarding the client's pending case, or statements made by the client regarding the pending case. Thus, you are not to monitor and record attorney/third party conversations, until further notice, where the subject of those conversations is the client's pending case. You must also be aware that, if during the attorney/third party conversation, the attorney gives legal advice to the third person concerning, for example, a real estate transaction or other civil matter, that conversation is privileged and you must minimize.

### Attorney - Fraud Exception

Pursuant to CPLR 4503, no privilege attaches to a client's communication to an attorney for the purpose of obtaining advice to assist the client in committing a crime or perpetrating a fraud. If the attorney knowingly assists the client in violating the law, the attorney becomes an accomplice or a co-conspirator and no privilege attaches. But even if no such accomplice or conspiracy liability exists, advice given in furtherance of illegal activity likewise is not privileged. This may arise where an attorney tells a subject how to avoid criminal liability for a planned activity in furtherance of the criminal enterprise. Monitors must be extremely cautious

in the interception of such conversations and must notify me immediately of conversations involving an attorney.

### PARISHIONER/CLERGYMAN

All acts and conversations between a parishioner and his clergyman are to be considered privileged. We could not obtain an eavesdropping warrant to listen to a man confess his sins to a priest in a confessional booth; similarly we must not listen to a subject discuss his personal, financial, or legal problems with his priest, minister, rabbi, etc..

### DOCTOR/PATIENT

Any communications a patient has with a doctor relative to diagnosis, symptoms, treatment, or any other aspect of physical, mental, or emotional health is privileged. If a subject is speaking to a doctor or engaging in conduct relative to his (or someone else's) health, TURN OFF THE MACHINE. STOP LISTENING. STOP RECORDING.

### HUSBAND/WIFE

Any conversations between a husband and his wife which relate in any way to the marital relationship is privileged. If they discuss their sex life, DON'T LISTEN. DON'T RECORD.

If they discuss problems their children are having in school, DON'T LISTEN. DON'T RECORD.

There are, however, two possible exceptions to this rule. First, if acts of domestic violence are monitored, these are new crimes for which the possibility of an amendment to the warrant may arise. Secondly, it may be that our subjects' spouses act as partners, message-takers, or message-deliverers for our subjects. Therefore, a limited degree of "spot-monitoring" may be maintained if a subject interacts with his spouse in this manner. If a pattern develops demonstrating that our subjects' spouses are in fact deeply involved in our subjects' criminal activities, you may intercept conversations relating to the activities, but you should always be aware of the husband/wife privilege.

## OTHER RELATIONSHIPS

No legal privilege exists with regard to conversations between a subject and his or her paramour.

Keep in mind, however, that our function is to intercept and record crime related conversations, not to indiscriminately invade the privacy of our subjects and others.

In general, follow the "spot-monitoring" rules if conversations of this type are intercepted.

## 5. EXTRINSIC INVESTIGATION AND MINIMIZATION

If investigative efforts, in addition to eavesdropping, indicate the existence of certain facts, those facts must be taken into consideration when monitoring the wiretap. A series of obscure conversations may be made meaningful by undercover contacts with the named subjects. If it is determined that these conversations related to non-designated crimes, and that this was apparent from the undercover or other extrinsic investigation, suppression of these conversations or of all conversations intercepted may result. Similarly, undercover or other types of extrinsic investigation may assist the monitors in identifying patterns of innocence or involvement, as well as privileged communications. It is therefore imperative that the monitors be familiar with all aspects of the investigation.

## 6. CASSETTES

The intercepted conversations are to be recorded on pre-numbered cassettes received from the Supervisory Investigator of the day. After each cassette has been completed, it should be duplicated and securely stored until sealing. Under no circumstances should any portion of any tape be erased.

## 7. ATTENDANCE SHEET

Each of the individuals listed below received minimization instructions regarding the "Harvest" Eavesdropping Warrant.

**MINIMIZATION INSTRUCTIONS - OCTOBER 6, 2000**

**PRINT RANK, NAME AND SHIELD NUMBER - THEN <u>SIGN</u>**

Inv. Juan J. Figueroa  3007  *[signed] Juan J. Figueroa*

Inv. Joseph T. McCabe  3675  *[signed] Joseph McC*

Inv. Anthony T. Vanturini  731  *[signed] Anthony J. Vanturini*

**MINIMIZATION INSTRUCTIONS - OCTOBER 7, 2000**

**PRINT RANK, NAME AND SHIELD NUMBER - THEN SIGN**

Lt Leslie Millington 405 [signature]
Inv Amy J Burns 3961 [signature]

**MINIMIZATION INSTRUCTIONS - OCTOBER 8, 2000**

**PRINT RANK, NAME AND SHIELD NUMBER - THEN SIGN**

INV WILLIAM A MURPHY 3568 *[signature]*

INV. Michael R. Trunk 706 *[signature]*

**MINIMIZATION INSTRUCTIONS - OCTOBER 9, 2000**

**PRINT RANK, NAME AND SHIELD NUMBER - THEN <u>SIGN</u>**

INV. JOSEPH A. HAFNER 4133   *Joseph A. Hafner*

**MINIMIZATION INSTRUCTIONS - OCTOBER 10, 2000**

**PRINT RANK, NAME AND SHIELD NUMBER - THEN SIGN**

| | | |
|---|---|---|
| INV TERENCE WORTHY | 3788 | [signature] |
| INV ARMAND COWANOS | 2749 | [signature] |
| INV Leslie Millington | 4015 | [signature] |
| INV. Michael R. Tack | 706 | [signature] |
| INV. Michael S. Grosso | 300 | [signature] |
| INV LOU MUÑOZ | 4156 | [signature] |
| S/INV Joseph Hunt | 88 | [signature] |

# MINIMIZATION INSTRUCTIONS - OCTOBER 17, 2000

## PRINT RANK, NAME AND SHIELD NUMBER - THEN SIGN

INV. ARMOND V. EDWARDS, 2749 — *Armond V. Edwards*